**COUNTY OF ESMERALDA, STATE OF NEVADA, Petitioner,**

v.

**U.S. DEPARTMENT OF ENERGY, Respondent.**

**COUNTY OF INYO, STATE OF CALIFORNIA, Petitioner,**

v.

**U.S. DEPARTMENT OF ENERGY, Respondent.**

Nos. 89–70142, 89–70162.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 16, 1990.

Decided Feb. 20, 1991.

Jed Courtney, Esmeralda County Dist. Atty., Goldfield, Nev., and Gregory L. James, County Counsel, County of Inyo, Paul N. Bruce, Asst. County Counsel, County of Inyo, Independence, Cal., for petitioners.

Vicki L. Plaut and Angus E. Crane, Atty., Dept. of Justice, Washington, D.C., for respondent.

Before WALLACE, Chief Judge, ALARCON and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Esmeralda County, Nevada, and Inyo County, California, petition this court to vacate as arbitrary and capricious the Department of Energy's denial of their request to designate them units of local government affected by the Yucca Mountain High Level Nuclear Waste Repository Project. We grant the counties' petitions and vacate the Secretary's decisions not to designate the counties affected units.

## BACKGROUND

The Nuclear Waste Policy Act requires the Department of Energy to site, construct, and operate repositories for high level radioactive waste. 42 U.S.C. § 10131(b)(1). As amended in 1987, the Act provides that Yucca Mountain is the sole area to be evaluated as a potential site for the first waste dump. 42 U.S.C. § 10172. In association with the Department's site evaluation, the Secretary of Energy must provide funds for participating in evaluation activities to affected units of local government, 42 U.S.C. § 10136(c), as well

as involve them in the evaluation process to a significant extent, *see, e.g.,* 42 U.S.C. § 10173(a)(3); 42 U.S.C. § 10173b(a)(2). The Act defines an "affected unit of local government" as:

the unit of local government with jurisdiction over the site of a repository or a monitored retrievable storage facility. Such term may, at the discretion of the Secretary, include units of local government that are contiguous with such unit.

42 U.S.C. § 10101(31). The unit of local government with jurisdiction over Yucca Mountain is Nye County, Nevada. In April 1988, the Secretary designated Clark County, Nevada, a county contiguous to Nye County, as an affected unit of local government, in response to a request by the County. In June 1988, the Secretary similarly designated Lincoln County, also contiguous to Nye County, as an affected unit of local government. In August and October 1988, respectively, the Secretary denied the requests of Esmeralda and Inyo counties, both contiguous to Nye County, to be designated as affected units of local government. Both counties requested reconsideration. The Secretary denied Esmeralda County's reconsideration request and Esmeralda County timely petitioned this court for review. After 120 days of inaction by the Secretary on its reconsideration request, Inyo County also petitioned this court for review. The Secretary had yet to respond to Inyo County's reconsideration request when this case was submitted.

## DISCUSSION

### 1. Jurisdiction

■ 42 U.S.C. § 10139(a)(1)(A) grants this court original jurisdiction to review only final decisions of the Secretary. At the time of this appeal, Inyo County had a motion for reconsideration pending before the Secretary. This renders the Secretary's refusal to grant affected unit status non-final. *See ICC v. Brotherhood of Locomotive Engineers,* 482 U.S. 270, 284–85, 107 S.Ct. 2360, 2369–70, 96 L.Ed.2d 222 (1987) (agency decision is non-final until request for reconsideration is acted on).

We have previously held that finality problems may be cured while an appeal is pending. In *Anderson v. Allstate Ins. Co.,* 630 F.2d 677 (9th Cir.1980), we gained jurisdiction over an appeal when a district judge dismissed remaining defendants from an action. The appealed orders were not initially final, because some of the plaintiffs' claims remained. *Id.* at 680. However, during the course of the appeal, the judge dismissed the entire action. We considered this development sufficient to validate the appeal, reasoning that "[t]here is no danger of piecemeal appeal ... nothing else remains in the federal courts." *Id.* at 681.

This case is similar to *Anderson.* On August 17, 1990, Inyo County notified us that it had withdrawn its motion for reconsideration. This subsequent event renders the Secretary's decision final, and "validate[s] [Inyo County's] prematurely filed appeal." *Id.* at 681. Because the Secretary's decision is now final, we have jurisdiction over Inyo County's claims under 42 U.S.C. § 10139(a)(1)(A).

### 2. Reviewability

■ Under the Administrative Procedure Act, an agency action is unreviewable when a statute commits the action to the agency's discretion, and "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985). Such a determination is statute specific, *see Webster v. Doe,* 486 U.S. 592, 108 S.Ct. 2047, 2052, 100 L.Ed.2d 632 (1988), and relates to the language of the statute and whether the general purposes of the statute would be endangered by judicial review, *see id.* 108 S.Ct. at 2052–53.

The Secretary correctly points out that the Nuclear Waste Policy Act does not identify specific factors for him to use in determining whether to grant contiguous counties affected unit status. The Act states merely that the decision to designate contiguous counties as affected units is "at the discretion of the Secretary." 42 U.S.C. § 10101(31). And the statement in the leg-

islative history that the Secretary "has the flexibility to designate a contiguous unit of local government as 'affected' when the Secretary *feels* that to do so will promote equity and further the process of facility citing and development," S.Rep. No. 152, 100th Cong., 1st Sess., 11–12 (1987) (emphasis added), supports his position. *See Webster*, 108 S.Ct. at 2052 (finding language allowing action which the CIA Director *deems* to be in the interests of the United States, rather than action which *is* in the interests of the United States to "exude[ ] deference" to the agency).

However, another section of the Nuclear Waste Policy Act specifically precludes judicial review of decisions of the Secretary taken under that section, *see* 42 U.S.C. § 10173(f), while the subtitle of the Act relevant to this case contains no such provision. Indeed, the subtitle of the Act relevant to this case expressly provides for judicial review of *"any* final decision or action of the Secretary," 42 U.S.C. § 10139(a)(1)(A) (emphasis added), or the alleged "failure of the Secretary ... to make *any* decision, or take *any* action, required under this subtitle," 42 U.S.C. § 10139(a)(1)(B) (emphasis added).

Furthermore, it is difficult to see how the purposes of the Act will be endangered by judicial review of the type of action at issue here. National security is not a concern here, *cf. Webster*, 108 S.Ct. at 2052, neither is prosecutorial discretion, *cf. Chaney*, 470 U.S. at 831, 105 S.Ct. at 1655. And a judicially manageable standard by which to review the Secretary's action readily presents itself: Did the Secretary meaningfully consider the possibility and extent of the suggested impacts of repository operations at Yucca Mountain upon the counties at issue and make a reasoned decision based upon such consideration? We therefore hold that judicial review of the Secretary's actions is appropriate in this context.

3. Substantive Review of the Secretary's Actions

We will set aside the Secretary's decisions only if they were arbitrary, capricious or otherwise not in accordance with law. *Delaney v. E.P.A.*, 898 F.2d 687, 689 (9th Cir.1990). We will not set aside an agency's construction of a statute it is implementing unless that construction conflicts with clear congressional intent or is unreasonable. *Id.*

A. *Statutory Interpretation and Stare Decisis Arguments*

■ The counties first contend that 42 U.S.C. § 10101(31) allows the Secretary only to designate all or none of the units of local government contiguous to Nye County as affected by the Yucca Mountain Project. We reject this contention. This statute is ambiguous as to whether the Secretary may include some contiguous areas but not others. But the relevant legislative history states that section 10101(31) is meant to give the Secretary "the flexibility to designate *a contiguous unit* of local government as 'affected' when [he] feels that to do so will promote equity...." S.Rep. No. 152, at 11–12 (emphasis added). This reference to "contiguous unit" in the singular, as well as the discussion of flexibility and equities, points toward individualized designations, not the all or nothing scheme that the counties advocate. Furthermore, even if the legislative history were silent, the Secretary's interpretation is surely a reasonable one, which is all that is necessary for it to be valid.

The counties also argue that the Secretary's refusal to designate them as affected units of local government is arbitrary and capricious because it disregards his alleged past policy of so designating contiguous counties simply on the basis of their location next to Nye County. Even if we were to accept the counties' dubious characterization of the Secretary's past actions, we reject the argument. The Secretary has promulgated no formal rule or even a policy statement on this issue. Absent such a rule or policy statement, we are in no position to compare the Secretary's actions with respect to Esmeralda and Inyo counties to the Secretary's actions with respect to Lincoln and Clark counties—actions which are not before this court. Inyo

and Esmeralda counties are entitled to an independent determination by the Secretary, not a comparison to the determinations by the Secretary in other cases. *See* K. Davis, 4 Administrative Law Treatise § 20.11 at 37 (2d ed. 1983) ("[o]nly for some formal adjudication or formal rulemaking do the courts even consider inconsistency of agencies' action").

### B. *The Secretary's Alleged Failure to Consider Effects Upon Inyo and Esmeralda Counties*

The counties argue that the Secretary's decisions are arbitrary and capricious because they disregard the effects that site characterization and repository activities might have on the counties.

Inyo County contends that the Secretary disregarded socio-economic impacts upon Inyo County. We reject this contention. The Secretary points out that only 0.03 percent of Nevada test site workers lived in Inyo County in 1988. By our calculation, this is only one of the 3,420 Nevada test site workers. While studies mentioned in the Secretary's December 1988 Report to Congress Pursuant to Section 175 of the Nuclear Waste Policy Act project that the figure might get a bit higher, it had not changed as of June 1989 and even if it did, there is no indication that it would be anything but minimal. While Inyo County has asserted that currently "a number" of Nevada Test Site workers reside there and more Yucca Mountain personnel "may also be expected", they provide no figures contrary to those of the Secretary. In any event, if in the future a significant number of Yucca Mountain personnel settle in Inyo County, the county could reapply for affected unit status.

■ Inyo County next contends that the Secretary disregarded the possibility of groundwater contamination in Inyo County from repository operation. We believe that this contention is justified. The Secretary does not dispute that Inyo County and Yucca Mountain share a common aquifer and that there is, therefore, a possibility that Inyo County water will be contaminated by radiation from Yucca Mountain. The Secretary contends that currently planned studies of the possibility of Inyo County groundwater contamination will be non-intrusive and current preliminary assessments indicate a very low probability that Inyo County groundwater will be contaminated by repository operation. However, the Secretary overlooks the fact that the purpose of affected unit status is not just to mitigate the effects of current site characterization activities or environmental harms which are certain to flow from repository operation. Affected unit status is also meant to ensure that all potential harms from repository operation—whatever the current estimate of their probability—are sufficiently studied before Yucca Mountain is approved as a repository. *See, e.g.*, 42 U.S.C. § 10136(c)(B)(i) ("The Secretary shall make grants to ... any affected unit of local government for the purpose of enabling [it] ... to review activities taken under this subtitle with respect to the Yucca Mountain site for purposes of determining *any potential ... environmental impacts of a repository on such ... affected unit of local government and its residents*.") (emphasis added). The participation of Inyo County as an affected unit of local government will help ensure that sufficient research is done of the impact of a Yucca Mountain repository on Inyo County groundwater and that such research is not ignored.

■ Inyo County also argues that the Secretary's decision is arbitrary and capricious because it disregards the possibility of radioactive releases for a repository at Yucca Mountain which would contaminate property within Inyo County. In support of its contention that Inyo County would be particularly at risk for such effects, the County notes that it is located only fourteen miles from the site and that over one-fourth of the current study area in the Department of Energy's Radiological Monitoring Plan is located in Inyo County. This contention also has merit.

In defense of his decision the Secretary argues first that current monitoring efforts in Inyo County are not sufficiently intrusive to warrant affected unit status.

However, Inyo County is not claiming current effects from site characterization activities. It claims future effects from actual operation of a repository. Thus, the Secretary's first argument is beside the point.

The Secretary next argues that radiation effects from an operative repository are too speculative to be relevant and would be mitigated by strategies that the Secretary has already identified. However, this argument flies in the face of the Nuclear Waste Policy Act language, quoted above, that affected unit status is meant to help determine potential environmental impacts of a repository on an area. Affected unit status is meant to give a jurisdiction funds to determine whether any environment impacts will probably occur, whether mitigation strategies of the Department of Energy will be effective, or whether new strategies are needed.

■ Both counties claim that the Secretary overlooked the fact that rail and highway transportation of nuclear waste through their jurisdictions to a repository at Yucca Mountain is likely. We agree. The Secretary's only argument in his defense that we have not already considered is that the counties' concerns are premature because actual transportation of nuclear waste is far off and no final selection of transportation routes has been made. However, it would be self-defeating to provide for review of potential environmental impacts of a repository but to allow that review only after plans have been put in near final form. Counties should have the opportunity to participate in preliminary planning stages, when alternatives are still available. *Cf. State of Nevada ex rel. Loux v. Herrington*, 777 F.2d 529, 532 n. 2 (9th Cir.1985) ("If Nevada discovers significant flaws in DOE's findings, DOE could turn its attention to other sites and cut short the expenditure of money, time, and manpower for the evaluation of a site which would later turn out to be unsuitable."). At this preliminary stage, the counties' participation can make a meaningful difference not just in how transportation routes are actually operated but also in whether sufficiently safe transportation routes exist to justify operation of a repository at Yucca Mountain and, if so, in which transportation routes will be used.

## CONCLUSION

We GRANT the petitions of Esmeralda and Inyo Counties. We VACATE the Secretary's decision not to designate the counties affected units and REMAND the cases for further proceedings consistent with this opinion.

WALLACE, Chief Judge, concurring and dissenting:

I agree we have jurisdiction to review Inyo County's petition, and concur in part 3.A. and the first holding of part 3.B. I respectfully dissent from the remainder of the majority opinion.

Because 42 U.S.C. § 10101(31) does not provide any meaningful criteria for evaluating the Secretary's decision to deny affected unit status, I conclude that the decision is unreviewable. Even assuming that the Secretary's decision is subject to judicial review, I see no persuasive basis for the majority's conclusion that the Secretary abused his discretion in denying affected unit status to Esmeralda and Inyo counties.

### I

Judicial review of agency action may not be had when the statute is "drawn so that a court [has] no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985) (*Chaney*); *Merrill Ditch–Liners, Inc. v. Pablo*, 670 F.2d 139, 141 (9th Cir.1982) (*Merrill Ditch–Liners*). In such cases, the action is considered "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see Chaney*, 470 U.S. at 830, 105 S.Ct. at 1655.

This is true even where, as here, the court possesses jurisdiction; even an express conferral of jurisdiction will not fulfill the other conditions to judicial review, such as the necessity for a meaningful standard. *See* 5 U.S.C. § 701(a) (judicial

review may not be had where "(1) statutes preclude judicial review; *or* (2) agency action is committed to agency discretion by law" (emphasis added)); *Board of Trade of Chicago v. SEC,* 883 F.2d 525, 530 (7th Cir.1989) (*Board of Trade*) (no-action letter from the Securities and Exchange Commission unreviewable, despite proviso in 15 U.S.C. § 78y that "[a] person aggrieved by a final order of the Commission ... may obtain review of the order in the United States Court of Appeals"); *Chernock v. Gardner,* 360 F.2d 257 (3d Cir.1966) (fee award by the Social Security Administration unreviewable, notwithstanding 42 U.S.C. § 405(g), which states that "[a]ny individual, after any final decision of the Secretary ..., may obtain review of such decision"); *see also Webster v. Doe,* 486 U.S. 592, 607 n.*, 108 S.Ct. 2047, 2055 n.*, 100 L.Ed.2d 632 (1988) (*Webster*) (Scalia, J., dissenting) (any right to review created by statute is subject to the conditions of the Administrative Procedure Act (APA), "unless *specifically* excluded").

Nevertheless, the majority finds significance in the jurisdictional provision of subpart A of the Act, which provides appellate courts with jurisdiction to review decisions of the Secretary. *See* maj. op. at 1218–19; 42 U.S.C. § 10139(a). Because one section within subpart A uses the term "affected unit," *see id.* § 10136, the majority concludes that Congress intended the courts to review the denial of affected unit status. The majority contrasts section 10136 to another section of the Act, which expressly precludes judicial review of actions taken under it. *See* maj. op. at 1219; 42 U.S.C. § 10173(f).

There are two problems with the majority's reasoning, both fatal to its conclusion of reviewability. First, as I have said, the questions of jurisdiction and a meaningful standard are separate. *See Board of Trade,* 883 F.2d at 530. Second, although the counties' claim may arise under subpart A, thus supporting jurisdiction, the provision at issue here is not found in subpart A, but rather, is a definition contained in a preliminary section. *See* 42 U.S.C. § 10101(31) (defining "affected unit"). The term "affected unit" is used throughout

the statute, both in sections where jurisdiction is present, *see id.* § 10136, and in those where it is not, *see id.* § 10173. Thus, the jurisdiction provision in subpart A does not provide a basis for inferring that Congress intended courts to review the Secretary's preliminary decision to deny affected unit status.

The question here is not jurisdictional. Rather, it is whether we have a meaningful standard for review or whether this case is one in which the Secretary's action is committed to his discretion by law. The majority concedes that the statute does not identify a meaningful standard. *See* maj. op. at 1218–19; 42 U.S.C. § 10101(31). Moreover, the Secretary has not promulgated regulations against which to measure his exercise of discretion. *Cf. Webster,* 486 U.S. at 602 n. 7, 108 S.Ct. at 2053 n. 7 (agency's failure to follow own regulations can be challenged); *Arnow v. United States Nuclear Regulatory Commission,* 868 F.2d 223, 234 (7th Cir.) (agency regulations can provide sufficient standard for meaningful review), *cert. denied,* —— U.S. ——, 110 S.Ct. 61, 107 L.Ed.2d 29 (1989). Finally, legislative history, for whatever its worth, strongly reinforces the conclusion that the Secretary's discretion is absolute, as the majority concedes. *See* maj. op. at 1218–19; S.Rep. No. 152, 100th Cong., 1st Sess. 12 (1987) (section 10101(31) gives the Secretary the "flexibility to designate a contiguous unit of local government as 'affected' when the Secretary *feels* that to do so will promote equity and further the process of facility siting and development" (emphasis added)).

The majority overcomes the absence of a meaningful standard by inventing one: "[A] judicially manageable standard by which to review the Secretary's action readily presents itself." *See* maj. op. at 1218–19. The majority cites no authority for this remarkable proposition, and I am unable to identify a "ready" justification for it. If the statute, regulations, and legislative history are utterly silent, by what authority does the majority speak on their behalf?

Beyond its jurisdictional claim, the majority states only that "it is difficult to see how the purposes of the Act will be endangered by judicial review of the type of action at issue here." Maj. op. at 1219. However, the majority overlooks the fact that affected unit status makes a county eligible for benefits and grants, and entitles the county to participate in some negotiations for compensation. *See* 42 U.S.C. §§ 10136, 10173, 10173a, 10243. Therefore, this case involves a controversy about funding, the type of dispute that is typically entrusted to the discretion of an agency. *See International Union, United Automobile, Aerospace & Agricultural Implement Workers v. Donovan,* 746 F.2d 855, 862 (D.C.Cir.1984) (declining to review an administrative funding decision, stating that "[t]he distribution of public funds among competing social programs is an archetypically political task, involving the application of value judgments and predictions to innumerable alternatives"), *cert. denied,* 474 U.S. 825, 106 S.Ct. 81, 88 L.Ed.2d 66 (1985). As one court has pointed out, interference in this type of decision not only violates the APA, but also creates a separation of powers problem:

> The existence of broad discretionary power in an agency often suggests that the challenged decision is the product of political, military, economic, or managerial choices that are not really susceptible to judicial review. Indeed, given the separation of powers between the judiciary and the other branches of government, it would appear unseemly in such circumstances for a court to substitute its judgment for that of an executive or agency official.

*Local 2855 v. United States,* 602 F.2d 574, 579 (3d Cir.1979); *see also Board of Trade,* 883 F.2d at 530 ("APA's committed-to-agency discretion limitation ... is in large measure a restatement of the separation-of-powers problem.").

Section 10101(31) was intended to grant the Secretary broad discretionary power to designate a county as an affected unit. *See* S.Rep. No. 152, 100th Cong., 1st Sess. 12 (1987) (section 10101(31) gives the Secretary the "flexibility to designate a contiguous unit of local government as 'affected' when the Secretary *feels* that to do so will promote equity and further the process of facility siting and development" (emphasis added)). Similar statutory grants of broad discretion have led courts to conclude that an agency action is unreviewable. *See Webster,* 486 U.S. at 600, 108 S.Ct. at 2052 (director may take action that he "deems" appropriate); *Board of Trade,* 883 F.2d at 531 ("Commission may, in its discretion, make such investigations as it deems necessary"); *Ruff v. Hodel,* 770 F.2d 839, 842 (9th Cir.1985) (statute requires proof "satisfactory to the Secretary"); *Gatter v. Nimmo,* 672 F.2d 343, 345 (3d Cir.1982) (statute provides that administrator may, at the administrator's option, take an action); *Merrill Ditch–Liners,* 670 F.2d at 141 (Secretary shall negotiate terms that he "deem[s] necessary"); *Greater New York Hospital Association v. Mathews,* 536 F.2d 494, 497 (2d Cir.1976) (statute provides that payment shall be made "at such time or times as the Secretary believes appropriate"). I see no basis for distinguishing these cases. I therefore believe that the Secretary's denial of affected unit status is unreviewable.

II

Despite evidence that Congress gave the Secretary broad discretion to determine whether a contiguous county is affected, the majority concludes that the Secretary's denial of affected unit status to Inyo and Esmeralda counties was arbitrary and capricious. In reviewing the Secretary's decision, the majority commits its second error. The majority fails to defer to the Secretary's "complicated balancing ... of factors which are peculiarly within its expertise." *Chaney,* 470 U.S. at 831, 105 S.Ct. at 1655. Instead, the majority substitutes its own judgment for that of the Secretary's. *Cf. Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971) (*Overton Park*) ("[T]he ultimate standard of review [of an agency's decision] is a narrow one. The court is not empowered to substitute its judgment for that of the agency."); *Merrill Ditch–Liners,* 670 F.2d

at 140 (review is precluded when plaintiff's complaint is primarily that "the agency made the wrong choice when making an informed judgment" (internal quotations omitted)).

The Secretary contends that it denied affected unit status to Inyo and Esmeralda Counties because the counties did not "demonstrate a sufficient level of potential impacts which would justify the allocation of limited resources to them." In support of this conclusion, the Secretary cites several studies which show that a Yucca Mountain waste repository would have minimal impact on Inyo or Esmeralda. The majority rejects these studies, however, and instead concludes that the possibility of future impacts require finding Inyo and Esmeralda Counties affected.

For example, the majority argues that the *possibility* of groundwater contamination in Inyo justifies finding Inyo affected, despite the fact, admitted by the majority, that the Secretary's studies show "a very low probability that Inyo County groundwater will be contaminated." Maj. op. at 1220. The majority justifies disregarding the Secretary's finding by claiming that affected unit status is necessary to insure that sufficient research is done to gauge potential impacts. Similarly, the majority states that Inyo's proximity to Yucca Mountain and the *possibility* of radioactive releases that would contaminate Inyo require finding Inyo affected. Again the majority rejects the Secretary's studies that show such releases are highly speculative by stating that "[a]ffected unit status is meant to give a jurisdiction funds to determine whether any environment [sic] impacts will probably occur." *Id.* at 1221. Finally, the majority accepts Esmeralda's and Inyo's argument that the government may transport waste through their counties, and concludes that the counties "should have the opportunity to participate in preliminary planning stages [of this transportation]." *Id.* at 1220–1221.

Under the majority's approach, it is difficult to see how the Secretary could ever deny affected unit status to a contiguous county. The government's site character-ization studies show no significant impact on Inyo or Esmeralda, and if the Yucca Mountain site is ever in operation, it will create few special problems for either county in terms of transportation, groundwater contamination or radioactive releases. However, by giving credit to the counties' arguments about purely speculative and unsubstantiated future effects, the majority is able to ignore the government's studies and conclusions. Under this reasoning, no matter how many studies support the Secretary's determination that a county is not affected, every contiguous county will be entitled to affected unit status to determine for itself whether environmental impacts will ever occur. This result is inconsistent with the discretionary terms of the statute, and with the majority's own conclusion that section 10101(31) was intended to give the Secretary the flexibility to determine, on an individual basis, whether a contiguous county is affected. Thus, I conclude the counties have failed to demonstrate that the Secretary abused his discretion.

## III

I agree with the majority that we have jurisdiction to hear this case. I do not agree, however, that the decision of the Secretary is therefore reviewable. This court has "no meaningful standard against which to judge" the Secretary's exercise of discretion. *See Chaney,* 470 U.S. at 830, 105 S.Ct. at 1655. We have previously declined review where, as here, neither the statute nor the regulations suggest a standard upon which review might be based. Never before have we simply invented a standard, as the majority does here, to force the review of an unreviewable administrative determination.

Moreover, even assuming that review is appropriate, I disagree with the majority's ultimate conclusion that the Secretary exceeded his discretionary authority. As the Supreme Court has admonished, discretionary administrative decisions are subject to narrow review. *See Overton Park,* 401 U.S. at 416, 91 S.Ct. at 823. We are not permitted to substitute our judgment for

that of an administrator empowered to make a discretionary decision.

Therefore, I respectfully dissent.