# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PINNACLE ARMOR, INC.,
     *Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,
     *Defendant-Appellee.*

No. 08-16209

D.C. No.
1:07-CV-01655-
LJO-DLB

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted
July 15, 2010—San Francisco, California

Filed May 26, 2011

Before: Richard C. Tallman and Jay S. Bybee, Circuit
Judges, and Timothy M. Burgess, District Judge.*

Opinion by Judge Bybee

---

*The Honorable Timothy M. Burgess, United States District Judge for
the District of Alaska, sitting by designation.

## COUNSEL

Michael A. Weinbaum (argued), San Clemente, California, for the plaintiff-appellant.

Tony West, Assistant Attorney General; Mark B. Stern and Henry C. Whitaker (argued), Appellate Staff, Civil Division, U.S. Department of Justice, Washington, DC, for the defendant-appellee.

## OPINION

BYBEE, Circuit Judge:

Pinnacle Armor, Inc. ("Pinnacle") produces armor designed to protect buildings, vehicles, and the human body. Among the primary customers for its body armor are local law enforcement agencies, who depend in large part upon a federal subsidy to purchase the body armor. This federal subsidy is conditioned on certification that the manufacturer's body armor is compliant with standards set by the National Institute of Justice ("NIJ"), an agency of the Department of Justice.

Pinnacle alleges that the NIJ's decision to revoke certification of one of its products (1) violated its procedural due process rights under the Fifth Amendment, and (2) was "arbitrary and capricious" in violation of § 706(2)(A) of the Administrative Procedure Act ("APA"). The district court dismissed both claims, holding that Pinnacle's interest in NIJ certification is not a protected property right under the due process clause, and that the NIJ's decision is exempt from review under the APA because the certification decision is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

We affirm in part and reverse in part. First, we affirm the dismissal of the due process claims because the NIJ afforded Pinnacle adequate process. Second, we hold that the NIJ's certification decision is not committed to agency discretion by law and is therefore reviewable under the APA. We remand to the district court for further proceedings on Pinnacle's APA claim.

I

As part of the Department of Justice, the NIJ is authorized to "improv[e] Federal, State, and local criminal justice systems and related aspects of the civil justice system [by] identifying programs of proven effectiveness . . . or programs which offer a high probability of improving the functioning of the criminal justice system." 42 U.S.C. § 3721. The NIJ, through its Office of Science and Technology ("OST"), establishes and maintains performance standards for bulletproof vests and other law enforcement technologies. 6 U.S.C. § 162(b)(3), (b)(6). The OST is charged with "establish[ing] and maintain[ing] a program to certify, validate, . . . or otherwise recognize law enforcement technology products that conform to standards established and maintained by the Office . . . ." *Id.* § 162(b)(4).

One of the programs the NIJ manages is the Body Armor Compliance Testing Program. Under this program, a manu-

facturer may submit its body armor to the NIJ for a determination of whether the armor complies with the NIJ's performance standards. If the product satisfies the standards, the NIJ includes it on a list of compliant body armor models. A product reaps a substantial benefit if it is found compliant: When state and local law enforcement agencies purchase body armor listed as "compliant" by the NIJ, the federal government subsidizes up to fifty percent of the purchase. *See* 42 U.S.C. §§ 3796*ll*, 3796*ll*-2.

The NIJ issued compliance standards in 2001. *See Nat'l Institute of Justice, U.S. Dept. of Justice, Ballistic Resistance of Personal Body Armor, NIJ Standard—0101.04, Revision A* (June 2001) [hereinafter "*NIJ Standard—0101.04*"]. After it learned that certain body armor models could wear out prematurely and that its 2001 compliance requirements did not adequately address this concern, the NIJ issued supplemental performance standards for body armor in 2005. *See Nat'l Institute of Justice, U.S. Dept. of Justice, NIJ 2005 Interim Requirements for Bullet-Resistant Body Armor* (Sept. 26, 2005) [hereinafter "2005 Interim Requirements"], *available at* http://www.ojp.usdoj.gov/bvpbasi/docs/08_18_05Body Armor_int_reqts.doc.[1] In order to maintain compliance, the

(Text continued on page 6982)

---

[1]The Interim Requirements provide that a Notice of Compliance will be issued if the manufacturer satisfies these conditions—

1.  Satisfaction, as determined by NIJ, of all of the requirements of NIJ Standard 0101.04 (including Addendum B), except as such requirements may be modified hereby;

2.  Either -

    (a) Submission of evidence (e.g., design drawings and specifications, lists of materials of construction of each component of the model, research, ballistic testing, descriptions of performance characteristics of critical components or materials, etc.) that demonstrates to the satisfaction of NIJ that the model will maintain ballistic performance (consistent with its originally declared threat level) over its declared warranty period; or

(b)   Submission, by an officer of the manufacturer who has the authority to bind it, of a written certification, the sufficiency of which shall be determined by NIJ, that -

(1) The model contains no material listed in an NIJ Body Armor Standard Advisory Notice in effect at the time of submission;

(2)   Lists the materials of construction of each component of the model;

(3)   The officer, on behalf of the manufacturer -

(A) Reasonably believes that the model will maintain ballistic performance (consistent with its originally declared threat level) over its declared warranty period;

(B)   Has objective evidence to support that belief; and

(C) Agrees to provide NIJ, promptly on demand, that evidence;

3. Submission, by an officer of the manufacturer who has the authority to bind it, of a written certification, the sufficiency of which shall be determined by NIJ, that labeling of armor shall be in accordance with NIJ Standard 0101.04, except that any references to such standard thereon shall instead be to the "NIJ 2005 Interim Requirements"; and

4. Submission, by an officer of the manufacturer who has the authority to bind it, of a written acknowledgment, the sufficiency of which shall be determined by NIJ, that -

(a) Recent NIJ research findings indicate that certain body armor models that were found by NIJ to be compliant with earlier NIJ requirements for ballistic resistance of new body armor (including NIJ Standard 0101.04) may not adequately maintain ballistic performance during their service life;

(b) NIJ recommends that those who purchase new bullet-resistant body armor select body armor models that comply with the NIJ 2005 Interim Requirements;

(c) NIJ will no longer publish lists of models found by NIJ to be compliant with earlier NIJ requirements for ballistic resistance of new body armor (including NIJ Standard 0101.04); and

2005 Interim Requirements require the manufacturers of body armor to submit either "evidence . . . that demonstrates to the satisfaction of the NIJ that the model will maintain ballistic performance (consistent with its originally declared threat level) over its declared warranty period," or a "written certification" by a manufacturer's officer stating that the officer believes the model will maintain ballistic performance; that the manufacturer has objective evidence to support that belief; and that the officer agrees to provide the NIJ with the evidence "promptly on demand" by the NIJ. The requirements provide that the NIJ will revoke a model's compliance status "at any time" if the evidence submitted by the manufacturer was "insufficient to demonstrate to the satisfaction of NIJ that the model w[ould] maintain its ballistic performance" over the model's declared warranty period.

Pinnacle manufactures body armor used by state and local government law enforcement agencies. One of its models, patented as "dragon skin," consists of overlapping ceramic discs, which allow the vest to be more flexible than other bulletproof vests. The parties do not dispute that dragon skin met the NIJ's 2001 requirements. *See NIJ Standard—0101.04*. The issue here is dragon skin's compliance with the 2005 Interim Requirements. To comply with the 2005 Interim Requirements, Pinnacle's officer issued a written certification declaring that he believed the vests would maintain their ballistic performance over the warranty period, that he had objective evidence to support this belief, and that he would submit the evidence to the NIJ on demand. In December 2006, the NIJ issued a Notice of Compliance to Pinnacle certifying that dragon skin, which had a six-year warranty period, was compliant with the NIJ's 2005 standards. Relying on this notice,

(d) Any list or database of compliant body armor models published or sponsored by NIJ will include only models that are found by NIJ to comply with the NIJ 2005 Interim Requirements.

Pinnacle spent hundreds of thousands of dollars producing vests for law enforcement agencies.

Subsequently, the NIJ received information from the Department of Defense that questioned the dragon skin model's durability under environmental stressors. The NIJ was particularly concerned about the effects of "temperature extremes and cycling" on the dragon skin model over time. Consistent with the 2005 Interim Requirements, the NIJ asked Pinnacle in June 2007, to provide documentation of the "data or other objective evidence that supports Pinnacle Armor's belief that [the dragon skin] model . . . will maintain its ballistic performance (consistent with its originally declared threat level) over its declared warranty period of six years." In response, Pinnacle submitted testimonials of those who wore the dragon skin vest for over one year, photographs of armor panels, and a test report on a vest that had been turned in after four years of service. The NIJ found that this evidence was "insufficient to demonstrate to the satisfaction of NIJ that the model . . . will maintain its ballistic performance . . . over its declared warranty period." The NIJ stated that as of August 3, 2007, the dragon skin model would no longer be deemed compliant with the NIJ requirements and published statements to that effect.

Pinnacle submitted additional information on three more occasions, including data describing the body armor's performance at high temperatures. After reviewing the additional evidence submitted by Pinnacle, the NIJ concluded that the evidence still did not sufficiently demonstrate that the dragon skin model would perform at the same level for six years. The NIJ gave several explanations for why Pinnacle's evidence was insufficient: a lack of information directly related to the dragon skin model as opposed to another model; a lack of an adequate explanation of the relevance of the test samples to the dragon skin model; insufficient test sample history (e.g., information concerning when the samples were constructed, how they were stored, whether they had been used); insuffi-

cient ballistic testing regarding shot locations, angles, and directions; and insufficient evidence as to environmental exposure such as temperature extremes, thermal stress, mechanical stress or failure, or humidity exposure. The NIJ invited Pinnacle to provide additional evidence, but Pinnacle declined to submit any further evidence and filed this lawsuit in November 2007.

Pinnacle asserts in its complaint that the NIJ's decision to remove the dragon skin body armor model from the list of compliant vests (1) violates Pinnacle's due process rights because the NIJ revoked certification without granting Pinnacle an opportunity to be heard and (2) violates the APA because the NIJ's action was arbitrary and capricious. Pinnacle sought a declaration from the district court that the NIJ's revocation of its compliance was illegal and petitioned the court to direct the NIJ to declare the model compliant with the 2005 Interim Requirements, and to order the NIJ to retract public statements about dragon skin. The government moved for dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The district court granted the government's motion, holding that Pinnacle did not have a property interest in the NIJ's compliance list and that the NIJ's discretionary decision to revoke the dragon skin model from its compliance list was not subject to judicial review under the APA. Pinnacle timely appealed.

## II

We review dismissal of a claim under Rule 12(b)(6) de novo. *N. Cnty. Cmty. Alliance, Inc. v. Salazar*, 573 F.3d 738, 741 (9th Cir. 2009). We accept "all allegations of material fact as true and construe them in the light most favorable" to Pinnacle. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

## III

Before we can assess Pinnacle's due process and APA claims, however, we must determine whether this case is

moot. The government argues Pinnacle's claims are moot because the NIJ published a new set of requirements for the Body Armor Compliance Testing Program during the pendency of this appeal. The new requirements, published in 2008, purport to supersede the 2005 Interim Requirements at issue in this case. *See Nat'l Institute of Justice, U.S. Dept. of Justice, Ballistic Resistance of Body Armor NIJ Standard–0101.06* (July 2008) [hereinafter "*NIJ Standard–0101.06*"], *available at* http://www.ojp.usdoj.gov/nij/pubs-sum/223054 .htm. According to the government, because all body armor currently seeking compliance must be tested by the NIJ under the 2008 requirements, the case is moot. We find, however, that the government has overstated the superseding effect of the new requirements and hold that the case is not moot.

In order to be listed as compliant with the 2008 requirements, body armor must be submitted to and tested by the NIJ. The NIJ's new requirements are accompanied by sample laboratory configurations to help manufacturers prepare their products for the NIJ's tests. Although the NIJ accepted a written certification from an officer or independent evidence to establish conformity with its requirements under the 2005 Interim Requirements, under the 2008 requirements it no longer does so. Importantly, the 2008 requirements do not "invalidate or render unsuitable any body armor models previously determined by NIJ to be compliant [under] the NIJ 2005 Interim Requirements," but advise agencies to "always require their procurements to meet or exceed the most recent and up-to-date version of this standard."

**[1]** The Constitution requires that the court decide legal questions in the context of actual "cases" or "controversies." U.S. Const., art. III, § 2. If a case is moot, the court lacks jurisdiction to hear the claims. *Headwaters, Inc. v. Bureau of Land Mgmt.*, 893 F.2d 1012, 1015 (9th Cir. 1990). "The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008) (quotation

marks omitted). As both parties acknowledge, the "burden of demonstrating mootness is a heavy one." *Id.* (quotation marks and alterations omitted). "A case or controversy exists justifying declaratory relief only when the challenged government activity is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties." *Headwaters*, 893 F.2d at 1015 (internal quotation marks and alterations omitted); *see also Alvarez v. Smith*, 130 S. Ct. 576, 580-81 (2009) (describing a moot claim as follows: "[The] dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights. Rather, it is an abstract dispute about the law, unlikely to affect these plaintiffs any more than it affects other . . . citizens. And a dispute solely about the meaning of a law, abstracted from any concrete actual or threatened harm, falls outside the scope of the constitutional words 'Cases' and 'Controversies.' ").

Here, Pinnacle argues that the NIJ's revocation of dragon skin's compliance status under the 2005 Interim Requirements violated its due process rights and the APA. Pinnacle petitions for two forms of declaratory relief: (1) a declaration that the NIJ's revocation of Pinnacle's notice of compliance was illegal and an abuse of discretion under the APA and (2) a declaration that the armor was in compliance with the NIJ requirements.

The 2008 Requirements explicitly state that they did not "invalidate or render unsuitable any body armor models previously determined by the NIJ to be compliant [under] the NIJ 2005 Interim Requirements." Thus, if Pinnacle succeeds on its claim and the court declares that its armor was compliant with the 2005 Interim Requirements, its armor will be presumptively compliant under the current standards. In this way, the 2005 Interim Requirements continue to have a "brooding presence, cast[ing] what may well be a substantial adverse

effect on the interests of the petitioning parties." *Headwaters*, 893 F.2d at 1015 (quotation marks omitted).

**[2]** The government argues that "any manufacturer wishing to participate in the Compliance Testing Program must submit its body armor for testing under the new [standards] . . . . even if NIJ previously determined the body armor model compliant with the NIJ 2005 Interim Requirements." But this is a misstatement of the requirements. The 2008 requirements clearly state that if the armor was compliant under the 2005 Interim Requirements, it is still compliant under the 2008 requirements and does not need to be retested. Therefore, because the 2008 requirements do not require retesting of the armor deemed compliant under the 2005 Interim Requirements, whether the dragon skin model was compliant with the 2005 Interim Requirements remains a "present controversy." *Feldman*, 518 F.3d at 642 (citation omitted). The 2008 Requirements have no impact on this controversy.

IV

Pinnacle claims that the NIJ's revocation of dragon skin's certificate of compliance, without conducting a formal hearing, violated its procedural due process rights. Such a claim "hinges on proof of two elements: (1) a protect[ed] liberty or property interest . . . and (2) a denial of adequate procedural protections." *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569-71 (1972)). We do not reach the first question because we hold that, even if Pinnacle possessed a property interest in dragon skin's certification, the NIJ afforded adequate process in revoking the certification.

To determine whether the NIJ provided adequate process to Pinnacle, we apply the balancing test the Supreme Court spelled out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). This requires us to weigh (1) Pinnacle's property interest, (2) the risk of erroneous deprivation of that interest through the pro-

cedures the NIJ used and the "probative value" of additional procedural safeguards, and (3) the Government's interest, including the fiscal and administrative burdens that would accompany additional or substitute procedures. *Id.* at 335. "This is not a bright line test, but is flexible depending on the circumstances." *Foss*, 161 F.3d 584, 589 (citing *Mathews*, 424 U.S. at 334).

A

We have no need to reach the question of whether Pinnacle had a constitutional property interest in certification, because even if it did, the NIJ's procedures did not create an undue risk that Pinnacle would be erroneously deprived of its property interest. Under the 2005 Interim Requirements, a body armor model "shall be deemed no longer in compliance" if:

> 1.  NIJ issues an NIJ Body Armor Standard Advisory Notice that identifies a material contained in the model;[**2**]
>
> 2.  NIJ determines that any certification or acknowledgment submitted with respect to the model is insufficient or inaccurate;
>
> 3.  The manufacturer fails to provide NIJ promptly on demand the evidence described in Requirements ¶ 2(b)(3); or
>
> 4.  NIJ determines, at any time, that the evidence provided to NIJ as described in Requirements ¶

---

**2**The NIJ may issue an NIJ Body Armor Standard Advisory Notice if it determines that a model of body armor contains materials that "appear to hold a risk of death or serious injury as a result of degraded ballistic performance." *See Nat'l Institute of Justice, U.S. Dept. of Justice, NIJ's Role in the Body Armor Safety Initiative*, *available at* http://www.ojp.usdoj.gov/nij/topics/technology/body-armor/safety-initiative.htm.

> 2(b)(3) and/or in connection with the model is insufficient to demonstrate to the satisfaction of NIJ that the model will maintain its ballistic performance (consistent with its originally declared threat level) over its declared warranty period.

2005 Interim Requirementsat 4. An armor model that loses compliant status may regain certification if the manufacturer "demonstrates to the satisfaction of NIJ that the model will maintain ballistic performance . . . over its declared warranty period," through the submission of evidence described in the Requirements or "other material as NIJ may require." 2005 Interim Requirements at 2, 4.

**[3]** Pinnacle does not allege that the NIJ failed to adhere to these procedures. Rather, Pinnacle argues that the federal Constitution entitles it to a formal administrative hearing before the NIJ can revoke the Notice of Compliance. The Due Process Clause, however, does not require that the agency grant a formal hearing. All that is required before a deprivation of a protected interest is "notice and opportunity for hearing *appropriate to the nature of the case*." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313(1950)) (emphasis added).

**[4]** We believe that the NIJ's procedures afforded Pinnacle a hearing "appropriate to the nature of the case." *Id.* The NIJ first raised its concerns about dragon skin with Pinnacle in a letter on June 22, 2007. The letter invited Pinnacle to submit evidence to satisfy the NIJ's concerns. Pinnacle submitted evidence in response on June 27, 2007. After reviewing the evidence and determining it to be insufficient, the NIJ revoked dragon skin's Notice of Compliance on August 3, 2007. In response, Pinnacle submitted additional evidence on August 9, 2007, August 21, 2007, and September 18, 2007. In a letter dated September 28, 2007, the NIJ explained in detail why Pinnacle's evidence was not sufficient to meet the

criteria laid out in the 2005 Interim Requirements. The letter also invited Pinnacle to submit additional evidence to satisfy the NIJ's concerns. Pinnacle declined the invitation.

Pinnacle has had a full and fair opportunity to be heard on its claims. The question under *Mathews* is whether some additional procedures would reduce the risk that the NIJ might have erroneously deprived Pinnacle of its Notice of Compliance. Although, as judges, we tend to favor the kind of hearings that are familiar to us, we think Pinnacle has not made the case that the Due Process Clause demands more formal proceedings in this case. Formal hearings are particularly useful when witness credibility is an issue and the decisionmaker must make judgments about witness demeanor. Here, there is no evidence that live testimony would improve the quality of the NIJ's decision. The kind of evidence the NIJ requires for a Notice of Compliance appears to be susceptible to written submissions. The NIJ wants to see lists of construction materials, research findings, and testing results related to ballistic performance. Such evidence lends itself to the kind of paper review a district court might engage in on a motion for summary judgment and does not require a full trial.

**[5]** Considering that Pinnacle had ample opportunities to submit evidence both before and after the Notice was revoked, and considering that the NIJ explained its decision, we believe that the NIJ afforded Pinnacle an adequate opportunity to be heard, even if no formal administrative hearings took place.

B

**[6]** Our analysis of the third *Mathews* factor also confirms our conclusion that Pinnacle received due process. This factor calls on us to consider the government's interest. Here, the government has an interest in ensuring that the armor it recommends to local police forces and subsidizes is reliable and will last for the period of the warranty. The government will

incur significant costs if police forces throughout the country have to replace their armor earlier than the stated warranty period. Additionally, given its statutory purpose of "improv-[ing] the safety and effectiveness of law enforcement technology," 6 U.S.C. § 162(a), the NIJ has an interest in maintaining the integrity of its performance standards. It therefore should not be required to certify products as compliant when the evidence fails to show that it complies with the NIJ's standards.

We further think that the NIJ has an interest in being able to resolve quickly questions over eligibility for a Notice of Compliance. The NIJ has every reason to avoid being over-inclusive or under-inclusive in its Notice of Compliance decisions. If it is too generous in its judgment, the NIJ may approve body armor for law enforcement officers that will not protect them sufficiently. On the other hand, if the NIJ is too restrictive in its judgments, it may discourage law enforcement officials from purchasing the best body armor available. In either case, however, the NIJ has an interest in issuing a Notice of Compliance promptly so that law enforcement agencies can make informed decisions regarding their body armor. Requiring trial-like procedures could slow the NIJ's decisionmaking process significantly, which would impair the ability of local law enforcement to make informed procurement decisions.

\* \* \* \* \*

**[7]** In sum, even assuming that Pinnacle has a protected due process property right in the NIJ's certification of dragon skin, it was not deprived of due process when the NIJ revoked the Notice of Compliance. Although the NIJ may choose to establish more formal procedures for evaluating a manufacturer's claims, we think the process it provided is sufficient to satisfy the Due Process Clause.

V

We must next decide whether the district court erred in dismissing Pinnacle's APA claims on a Rule 12(b)(6) motion.

The district court's dismissal of the APA claims rested on two alternative grounds. First, the district court held that APA § 701(a)(2) precludes review of the NIJ's decision to issue a Notice of Compliance. That section provides that agency actions are unreviewable when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The district court held § 701(a)(2) precluded review because "the 2005 [I]nterim [R]equirements vest[ ] NIJ with discretion to remove a bulletproof vest model from NIJ's compliance list without statutory restraint." In the alternative, the district court held that even if § 701(a)(2) did not preclude review, Pinnacle's APA claim cannot succeed on the merits because Pinnacle "ma[de] no attempt to demonstrate that NIJ acted arbitrarily or capriciously," in violation of APA § 706(2)(A). We conclude that the district court erred, both in concluding that the agency's action was unreviewable under the APA, and that Pinnacle failed to adequately plead an APA claim on the merits.

A

We first address whether the NIJ's decision is reviewable under the APA. In general, there is a "strong presumption that Congress intends judicial review of administrative action." *Helgeson v. Bureau of Indian Affairs*, 153 F.3d 1000, 1003 (9th Cir. 1998) (quoting *Traynor v. Turnage*, 485 U.S. 535, 542 (1988)); *see also Abbott Laboratories v. Gardner*, 387 U.S. 136, 140-41 (1967) ("[T]he Administrative Procedure Act . . . embodies the basic presumption of judicial review . . . . [O]nly upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review."), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977); *ANA Int'l, Inc. v. Way*, 393 F.3d 886, 890 (9th Cir. 2004) ("The default rule is that agency actions are reviewable . . . even if no statute specifically authorizes judicial review"). This presumption is overcome only in two narrow circumstances. The first, which is not at issue here, is when Congress expressly

bars review by statute. *See* 5 U.S.C. § 701(a)(1); *Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 44 (1991) (review may be precluded when there is "clear and convincing evidence of . . . legislative intent" to bar judicial review) (internal quotation marks omitted). The second applies in "those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply," *Webster v. Doe*, 486 U.S. 592, 599 (1988) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971)) (internal quotation marks omitted), thereby leaving the court with "no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985); *see* 5 U.S.C. § 701(a)(2).

In determining whether judicial review is precluded on § 701(a)(2) grounds, we consider "the language of the statute and whether the general purposes of the statute would be endangered by judicial review." *Cnty. of Esmeralda v. Dep't of Energy*, 925 F.2d 1216, 1218 (9th Cir. 1991) (citing *Webster*, 486 U.S. at 599-601.). Therefore, "the mere fact that a statute contains discretionary language does not make agency action unreviewable." *Beno v. Shalala*, 30 F.3d 1057, 1066 (9th Cir. 1994).

**[8]** We turn to the statute at issue to determine whether the NIJ was bound by a "meaningful standard against which [we can] judge the agency's exercise of discretion." *Heckler*, 470 U.S. at 830. In this case, the statute tells us that OST, as a part of the NIJ, "shall have the . . . dut[y] . . . [t]o establish and maintain performance standards . . . and test and evaluate law enforcement technologies," as well as "[t]o establish and maintain a program to certify, validate, and mark . . . law enforcement technology products that conform to standards established and maintained by [OST]." 6 U.S.C. § 162(b)(3)-(4). Congress left it to the NIJ and OST to establish those standards. *Id.* § 162(b)(3).

We may also look to "regulations, established agency policies, or judicial decisions" for a meaningful standard to

review. *Mendez-Gutierrez v. Ashcroft*, 340 F.3d 865, 868 (9th Cir. 2003). In this case, we believe that, together, the 2005 Interim Requirements and the statute supply the standard against which we can judge the agency's decision-making. As mentioned in the due process discussion above, the Requirements provide that body armor must conform to the detailed ballistic resistance criteria set out in *NIJ Standard–0101.04* over its declared warranty period.

Furthermore, the Requirements specify that the NIJ "shall" revoke certification when it determines that the evidence and statements the manufacturer submitted are insufficient. 2005 Interim Requirementsat 4. And it is also clear that the overriding purpose of the NIJ's certification program is to protect law enforcement officers. 6 U.S.C. § 162 (describing the mission of OST as to "carry out programs that, through the provision of equipment, training, and technical assistance, improve the safety and effectiveness of law enforcement technology and improve access to such technology by Federal, State, and local law enforcement agencies"). The NIJ recognizes this purpose in the 2005 Interim Requirements' introductory statement, which explains that the purpose of the NIJ's certification program is "to ensure the safety of public safety officers."

Although the Requirements provide that the NIJ determines the "sufficiency" of a manufacturer's evidence and statements, the Requirements do not give the NIJ unbridled discretion. Just because a statute calls on the agency to exercise its "judgment" in making its determination does not necessarily make an agency's action unreviewable. *See Beno*, 30 F.3d at 1066, 1068 (decision of the Secretary of Health & Human Services to grant a waiver to California to permit greater experimentation with administration of welfare benefits was reviewable even though the statute permits the Secretary to authorize waivers only "to the extent and for the period *the Secretary finds* necessary," and which "in the *judgment* of the Secretary [are] likely to assist in promoting [statutory] objec-

tives") (second emphasis added) (first brackets omitted). Indeed, although 5 U.S.C. § 701(a)(2) insulates from judicial review agency discretion where there is no law to apply, the APA itself commits final agency action to our review for "abuse of discretion." 5 U.S.C. § 706(2)(A); *see Heckler*, 470 U.S. at 829. Those standards are adequate to allow a court to determine whether the NIJ is doing what it is supposed to be doing: setting out standards and determining whether law enforcement products should be certified under those standards, whatever they may be. *See Newman v. Apfel*, 223 F.3d 937, 943 (9th Cir. 2000) ("The fact that an agency has broad discretion in choosing whether to act does not establish that the agency may justify its choice on specious grounds. To concede otherwise would be to disregard entirely the value of political accountability, which itself is the very premise of administrative discretion in all its forms.").

**[9]** Nor does the Government demonstrate how judicial review would endanger the general purposes of the statute at issue here or the NIJ's ability to enforce its own regulations. As discussed above, 6 U.S.C. § 162(b) simply provides that OST will establish standards and a system for certification of technologies such as body armor. The broader statutory purpose of the NIJ includes "improving Federal, State, and local criminal justice systems and related aspects of the civil justice system," as well as "identifying programs of proven effectiveness, programs having a record of proven success, or programs which offer a high probability of improving the functioning of the criminal justice system." 42 U.S.C. § 3721. The government fails to show how any of these objectives would be endangered by judicial review in a case like this. Moreover, the NIJ's enforcement of its regulations lends itself to traditional APA review. We are capable—without interfering in the NIJ's power to create body armor performance standards or its ability to enforce its own regimen—of reviewing the NIJ's actions for arbitrary or capricious decisionmaking.

In the rare instance we do find that want of a meaningful standard precludes review, the case typically involves either

an agency's power to manage its own docket, *see*, *e.g.*, *Heckler*, 470 U.S. 821 (denying challenge to FDA's decision not to regulate a certain type of drug); *Ekimian v. INS*, 303 F.3d 1153 (9th Cir. 2002) (denying challenge to Board of Immigration Appeals' decision not to exercise its power to reopen a case sua sponte), or issues where we have neither standards nor expertise, such when we are asked to review questions of national security, *see Webster*, 486 U.S. 592 (denying challenge to CIA director's decision to dismiss an employee), or an agency's decision to deny a discretionary federal loan, *see Helgeson*, 153 F.3d at 1004 ("[I]t is not [the court's] proper function to sit as a judicial loan review committee."). We find that the current case cannot be analogized to any of these situations.

**[10]** For the reasons discussed above, we hold that § 701(a)(2) does not categorically preclude us from reviewing the NIJ's decision.

B

**[11]** The district court held that even if it could review the NIJ's decision, it would be compelled to dismiss Pinnacle's APA claims on the merits because "Pinnacle ma[de] no attempt to demonstrate that the NIJ acted arbitrarily and capriciously." But Pinnacle is not required to "demonstrate" anything in order to survive a Rule 12(b)(6) motion to dismiss. Rather, it only needs to *allege* "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). If the district court intended to make a ruling on the merits of Pinnacle's APA claim, based on consideration of the full administrative record, it could have converted its decision into a Rule 56 summary judgment ruling. But it did not do so.

**[12]** We turn to Pinnacle's complaint to see if it alleges sufficient facts to state a claim for relief under the APA. We

conclude that it does. The complaint alleges that the methods the NIJ uses to test body armor bear no relation to the standard set out in the Requirements—namely, that the armor will maintain its ballistic integrity over the life of the warranty. Pinnacle further alleges that the NIJ itself has admitted this. Finally, Pinnacle alleges that the NIJ violated the APA by failing to provide the data upon which revocation of the Notice of Compliance was based. We cannot comment knowledgeably on any of these claims, except to state that, based on Pinnacle's allegations, it is entitled to proceed past a motion to dismiss. Although the district court may decide, upon full consideration of the administrative record, that these claims would not survive a Rule 56 motion for summary judgment, Pinnacle's claims are certainly sufficient to survive a Rule 12(b)(6) motion to dismiss.

## VI

**[13]** For the foregoing reasons, we conclude that the district court properly dismissed Pinnacle's due process claim because the NIJ afforded adequate process to Pinnacle. Regarding Pinnacle's claims under the APA, we hold that the district erred in both concluding that the NIJ's decision was not reviewable and in dismissing the claims on the merits.

The parties shall bear their own costs on appeal.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.