**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| PEDRO TOMAS PEREZ PEREZ, *Plaintiff-Appellant,* v. CHAD F. WOLF, Acting Secretary of Homeland Security; BARBARA Q. VELARDE, Chief of the Administrative Appeals Office for USCIS; MARK KOUMANS, Acting Director of USCIS; LAURA B. ZUCHOWSKI, Director of the USCIS Vermont Service Center, *Defendants-Appellees.* | No. 18-35123 D.C. No. 2:17-cv-00249-JLR OPINION |

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Argued and Submitted April 9, 2019
Seattle, Washington

Filed November 22, 2019

Before: William A. Fletcher, Consuelo M. Callahan,
and Morgan Christen, Circuit Judges.

Opinion by Judge W. Fletcher;
Dissent by Judge Callahan

## SUMMARY[*]

### Immigration

The panel reversed the district court's dismissal for lack of jurisdiction of Pedro Tomas Perez Perez's suit challenging the denial of his U visa petition, holding that neither § 701(a)(2) of the Administrative Procedure Act ("APA"), nor 8 U.S.C. § 1252(a)(2)(B)(ii) – both of which preclude review of certain discretionary agency decisions – barred review of Perez's claims under the APA.

To be eligible for a U visa, a petitioner must establish that he or she has suffered substantial physical or mental abuse from having been a victim of qualifying criminal activity, possesses information about that activity, and has been helpful, is being helpful, or is likely to be helpful to an authority investigating or prosecuting that activity. The United States Citizenship and Immigration Service ("USCIS") denied Perez's U visa petition on the ground that he had not shown that he was a victim of a qualifying crime. Perez challenged that decision in the district court, which concluded that his action was not reviewable under APA § 701(a)(2).

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that Perez's claims were not barred by APA § 701(a)(2), which precludes judicial review of actions "committed to agency discretion by law," where there is no judicially manageable standard by which a court can judge how the agency should exercise its discretion. Explaining that the relevant statutes establish the requirements for a U visa, as well as application procedures and agency duties, the panel concluded that the statutory framework affords meaningful standards for reviewing claims challenging USCIS's compliance with that framework. Responding to the dissent's argument that regulations grant USCIS "sole jurisdiction" over U visa petitions and "sole discretion" to determine the value of evidence, the panel observed that the statues themselves use no such language. The panel also explained that it does not follow from the fact that USCIS has sole jurisdiction to issue U visas that a *court* is without jurisdiction to review USCIS's decision.

Further, after sua sponte consideration, the panel held that 8 U.S.C. § 1252(a)(2)(B)(ii), which bars judicial review of immigration decisions or actions "the authority for which is specified under this subchapter [8 U.S.C. §§ 1151–1381] to be in the discretion of the Attorney General or the Secretary of Homeland Security," does not strip the court of jurisdiction to review Perez's action. First, the panel explained that the U visa statutory provisions at 8 U.S.C. §§ 1101(a)(15) and 1184(p) do not "specify" that the authority to grant or deny a U visa petition is in the discretion of the Secretary of Homeland Security, observing that neither provision uses the word "discretion" or any synonym. The panel also concluded that, even though agency regulations provide that USCIS will determine, "in its sole discretion," the evidentiary value of the evidence, regulatory declarations of discretion, standing alone, do not trigger § 1252(a)(2)(B)(ii). Second, the panel

explained that the relevant statutes establish statutory standards that constrain the Secretary's U visa determinations such that the determinations are not wholly discretionary.

Dissenting, Judge Callahan wrote that Congress granted the USCIS absolute discretionary authority over U visa decisions, and the Supreme Court prohibits this court from reviewing decisions that Congress commits to agency discretion. Judge Callahan concluded that the majority opinion breached the separation of powers to arrogate the power unto itself to review the discretionary decisions of U visas. Further, Judge Callahan wrote that, by misapplying the applicable statutes, by ignoring every other circuit that has decided this issue, and by violating the proper role of the courts, the majority opinion has opened "Pandora's box" to courts reviewing decisions on the approximately 250,000 U visa petitions currently pending before the USCIS. Because this result is not required by the applicable statutes and regulations, is unprecedented in this circuit, and contrary to the consistent position of the court's sister circuits, Judge Callahan adamantly dissented.

## COUNSEL

Henry Cruz (argued), Rios & Cruz P.S., Seattle, Washington, for Plaintiff-Appellant.

Francesa M. Genova (argued), Trial Attorney; William C. Peachey, Director, District Court Section; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Defendants-Appellees.

**OPINION**

W. FLETCHER, Circuit Judge:

Pedro Tomas Perez Perez brought suit in the district court under the Administrative Procedure Act ("APA"), challenging the denial of his U visa petition by the United States Citizenship and Immigration Service ("USCIS"). The district court dismissed Perez's action for lack of subject matter jurisdiction. The district court held that § 701(a)(2) of the APA precludes judicial review because U visa determinations are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). On appeal, Perez argues that § 701(a)(2) does not apply, contending that the statutory and regulatory framework governing U visa determinations affords "meaningful standards" for reviewing his claims. *Heckler v. Chaney*, 470 U.S. 821, 834 (1985).

We hold that § 701(a)(2) does not bar judicial review of Perez's APA claims. We hold, further, after sua sponte consideration, that § 1252(a)(2)(B)(ii) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") does not strip jurisdiction over Perez's action.

We reverse and remand.

## I. Background

In determining whether judicial review is precluded by § 701(a)(2), "we consider 'the language of the statute and whether the general purposes of the statute would be endangered by judicial review.'" *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1068 (9th Cir. 2015) ("*ASSE*") (quoting

*Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 719 (9th Cir. 2011)). We may also consider agency regulations and policy. *Pinnacle*, 648 F.3d at 719.

### A. U Visa Statutory and Regulatory Framework

Congress created U nonimmigrant status as part of the Victims of Trafficking and Violence Protection Act of 2000 ("VTVPA"). The U visa program is intended to "strengthen the ability of law enforcement agencies to detect, investigate, and prosecute [certain crimes] . . . against aliens, while offering protection to victims of such offenses in keeping with the humanitarian interests of the United States." VTVPA, Pub. L. No. 106-386, § 1513(a), 114 Stat. 1533(a)(2). It is also intended to "encourage law enforcement officials to better serve immigrant crime victims and to prosecute crimes committed against aliens" and "facilitate the reporting of crimes to law enforcement officials by trafficked, exploited, victimized, and abused aliens who are not in lawful immigration status." *Id*.

To be eligible for a U visa, a petitioner must establish that he or she: (1) "has suffered substantial physical or mental abuse as a result of having been a victim of qualifying criminal activity"; (2) "possesses information" about qualifying criminal activity; and (3) "has been helpful, is being helpful, or is likely to be helpful" to an authority "investigating or prosecuting" qualifying criminal activity. 8 U.S.C. § 1101(a)(15)(U)(i). Helpfulness may also be assessed in connection with the "detection" of qualifying criminal activity. 8 C.F.R. § 214.14(a)(5), (c)(2)(i).

Qualifying criminal activity is defined as criminal activity

> involving one or more of the following *or any similar activity* in violation of Federal, State, or local criminal law: rape; torture; trafficking; incest; domestic violence; sexual assault; abusive sexual contact; prostitution; sexual exploitation; female genital mutilation; being held hostage; peonage; involuntary servitude; slave trade; kidnapping; abduction; unlawful criminal restraint; false imprisonment; blackmail; extortion; manslaughter; murder; felonious assault; witness tampering; obstruction of justice; perjury; or attempt, conspiracy, or solicitation to commit any of the above mentioned crimes.

8 U.S.C. § 1101(a)(15)(U)(iii) (emphasis added). The phrase "any similar activity" "refers to criminal offenses in which the nature and elements of the offenses are substantially similar to the statutorily enumerated list of criminal activities." 8 C.F.R. § 214.14(a)(9). The qualifying criminal activity must have "violated the laws of the United States or occurred in the United States." 8 U.S.C. § 1101(a)(15)(U)(i)(IV).

To apply for a U visa, a petitioner must file with USCIS a Form I-918, Petition for U Nonimmigrant Status. *See* 8 C.F.R. § 214.14 ("USCIS has sole jurisdiction over all petitions for U nonimmigrant status."). The petition packet must contain the following document:

> a certification from a Federal, State, or local law enforcement official, prosecutor, judge, or

other Federal, State, or local authority investigating [qualifying] criminal activity . . . . *This certification shall state that the alien "has been helpful, is being helpful, or is likely to be helpful" in the investigation or prosecution of* [*qualifying*] *criminal activity . . . .*

8 U.S.C. § 1184(p)(1) (emphasis added).

USCIS has created a multi-part form for petitioners to use when obtaining the required certification. USCIS refers to the form as "Form I-918, Supplement B, 'U nonimmigrant Status Certification'" ("certification form"). 8 C.F.R. § 214.14(c)(2)(i). Parts One and Two of the form ask for identifying information of the petitioner and the certifying law enforcement agency. In Part Three, the certifying official is asked to identify the qualifying criminal activity of which the petitioner was a victim and to "describe the criminal activity being investigated and/or prosecuted and the involvement" of the petitioner. In Part Four, labeled "Helpfulness of the Victim," the certifying official is asked to affirm or deny whether the petitioner has been, is being, or is likely to be helpful in the investigation or prosecution of qualifying criminal activity. If the certifying official affirms the petitioner's helpfulness, the official is asked to explain that answer in a space provided on the form. The certifying official must sign the certification form under penalty of perjury.

In addition to Form I-918 and the certification form, the U visa petition packet must include "a signed statement by the petitioner describing the facts of the victimization." 8 C.F.R. § 214.14(c)(2)(iii). The petitioner may also submit

"additional evidence" to establish U visa eligibility. 8 C.F.R. § 214.14(c)(2)(ii).

In acting on a petition, USCIS "shall consider any credible evidence relevant to the petition." 8 U.S.C. § 1184(p)(4). Agency regulations add that "USCIS will determine, in its sole discretion, the evidentiary value of previously or concurrently submitted evidence," including the certification form. 8 C.F.R. § 214.14(c)(4). In practice, USCIS gives a properly executed certification form "significant weight," though it "will not consider such certification to be conclusory evidence that the petitioner has met the eligibility requirements." 72 Fed. Reg. 53014, 53024 (Sept. 17, 2007).

"If USCIS determines that the petitioner has met the requirements for U-1 nonimmigrant status, USCIS will approve Form I-918." 8 C.F.R. § 214.14(c)(5)(i). "For a petitioner who is within the United States, USCIS also will concurrently grant U-1 nonimmigrant status, subject to the annual [10,000 U visa cap]." *Id.* "All eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list." 8 C.F.R. § 214.14(d)(2). Petitioners on the waiting list are granted deferred action or parole while waiting for additional U visas to become available. *Id*. Once petitioners receive a U visa, they may apply for permanent resident status after three years of continued physical presence in the United States as a U nonimmigrant, provided they have not "unreasonably refused to provide assistance in a criminal investigation or prosecution." 8 U.S.C § 1255(m)(1).

Regulations provide that if USCIS denies a petitioner's Form I-918, Petition for U Nonimmigrant Status, "USCIS

will provide written notification to the petitioner of the reasons for the denial." 8 C.F.R. § 214.14(c)(5)(ii). "The petitioner may appeal a denial of Form I-918 to the Administrative Appeals Office (AAO)[.]" *Id.*

## B.  Factual and Procedural Background

Perez is a citizen of Mexico who resides in Washington State.  On January 10, 2012, Perez reported to police that he was being harassed.  He told the investigating officer that the harassers were two individuals to whom he had lent a total of roughly $50,000 and from whom he was requesting repayment.  The officer's report states that, according to Perez, one of the individuals threatened to "place Perez in jail if he keeps asking for his money back" and told Perez "he would make him disappear."  The officer wrote in his report that these threats "were not defined enough for me to file harassment charges."  Perez later applied for and received temporary anti-harassment orders against the individuals.  The orders were dismissed after the individuals could not be served.

On July 10, 2013, Perez petitioned for U nonimmigrant status under 8 U.S.C. § 1101(a)(15)(U).  Perez's petition package contained his I-918 Form and completed certification form, as well as supplemental materials including the above described police report and Perez's anti-harassment order petition.  The certification form, which was completed by the Commander of the Investigations Division of the Renton Police Department, indicates that Perez was the victim of "harassment" under Wash. Rev. Code § 9A.46.020 between August 2009 and October 2011.  In the box that asks the certifying official to "describe the criminal activity being investigated and/or prosecuted and the involvement of the

individual," the Commander wrote: "This was an informational case and no charges were filed. Description was harassment 9A.46.020 as noted by the officer." In the box labeled "Helpfulness of the victim," the Commander wrote:

> Perez did make an informational police report and requested an anti harassment order. He received a temporary order on 1/17/2012. On 1/31/2012 the order was dismissed, defendant was not able to be served, petitioner may return to refile when def. is located. The description of the informational report was noted as 9A.46.020 Harassment.

USCIS denied Perez's U visa petition. The denial letter states, "The evidence, as presented, does not establish that you have been a victim of qualifying criminal activity." The letter explains that Perez "did not provide sufficient evidence to prove that [the] crime of harassment is similar to a [qualifying crime]." Perez appealed to the AAO. On appeal, Perez argued that the harassment to which he was subject "involved and/or was similar to felonious assault [which is a qualifying crime] . . . because it involved a threat to kill him that placed him in apprehension of harm." The AAO denied Perez's appeal. It concluded, "There is no evidence in the record that the certifying agency detected or investigated an attempted or actual felonious assault or any other qualifying crime. The Petitioner has not shown that any crime other than harassment was detected or investigated by the law enforcement agency."

On October 28, 2015, Perez filed a motion to reconsider with the AAO. He argued that the harassment in his case was

not just simple harassment, but felony harassment under Washington law because it involved a threat "to kill [him]" that "by words or conduct" placed him "in reasonable fear that the threat will be carried out." WASH. REV. CODE §§ 9A.46.020(1)(a)–(b), (2)(b)(ii) (2011). He further argued that the Washington police had "at least *detected* felony harassment," even if they did not further investigate that crime. Finally, Perez argued that felony harassment "involves or is substantially similar to" the qualifying crime of felony assault, and that the agency therefore erred when it concluded that Washington police had not detected a qualifying crime in Perez's case. The AAO denied the motion to reconsider. It concluded that "while felony harassment and/or felonious assault may have also occurred, there is no indication that the certifying agency actually detected or investigated those offenses." Further, it concluded that even if felony harassment had been detected, such harassment is not "substantially similar" to felony assault under Washington law.

On February 17, 2017, Perez brought suit in the federal district court challenging the denial of his U visa petition. His complaint contains several claims under the APA, 5 U.S.C. § 706(2). Specifically, Perez claims that the agency acted contrary to statute by "fail[ing] to consider all credible evidence," erred in concluding that "felony harassment does not constitute a qualifying criminal activity," and made a finding unsupported by substantial evidence when it concluded "that felony harassment was not detected by law enforcement."

After the parties filed cross-motions for summary judgment, the district court dismissed Perez's action for lack of subject matter jurisdiction. The district court concluded

that Perez's action was not reviewable under the APA because of the APA's exception for "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The district court determined that § 701(a)(2) applies because "[i]n the U-visa context, there is no judicially manageable standard by which a court can judge how USCIS should exercise its discretion."

Perez timely appealed. We have jurisdiction under 28 U.S.C. § 1291. "We review de novo the district court's dismissal for lack of subject matter jurisdiction." *Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1136 (9th Cir. 2013).

## II. Discussion

"The default rule is that agency actions are reviewable under federal question jurisdiction, pursuant to 28 U.S.C. § 1331 . . . even if no statute specifically authorizes judicial review." *ANA Int'l, Inc. v. Way*, 393 F.3d 886, 890 (9th Cir. 2004) ("*ANA*"). The APA reinforces this presumption of judicial reviewability by "confer[ring] a general cause of action upon persons 'adversely affected or aggrieved by agency action within the meaning of a relevant statute[.]'" *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984) (quoting 5 U.S.C. § 702).

The presumption in favor of judicial review of final agency action "is overcome only in two narrow circumstances." *Pinnacle*, 648 F.3d at 719. The first is "when Congress expressly bars review by statute." *Id*. (citing 5 U.S.C. § 701(a)(1); *Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 44 (1991)). The second is in the "'rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply,' thereby

leaving the court with 'no meaningful standard against which to judge the agency's exercise of discretion.'" *Id*. (quoting *Webster v. Doe*, 486 U.S. 592, 599 (1988); *Chaney*, 470 U.S. at 830). The APA reflects these two exceptions. Review under the APA is unavailable when "statutes preclude judicial review," 5 U.S.C. § 701(a)(1), and when the "agency action is committed to agency discretion by law," *id.* at § 701(a)(2).

The district court dismissed Perez's action as unreviewable under § 701(a)(2) after concluding that "there is no judicially manageable standard by which a court can judge how USCIS should exercise its discretion." The first issue on appeal is whether the U visa statutory and regulatory framework furnishes meaningful standards by which to review Perez's claims under the APA. The second issue, which we raise sua sponte, is whether IIRIRA's jurisdiction-stripping provision, codified at 8 U.S.C. § 1252(a)(2)(B)(ii), precludes judicial review.

## A.  § 701(a)(2) of the APA

Section 701(a)(2) of the APA precludes judicial review of agency actions "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). We "read the exception in § 701(a)(2) quite narrowly." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370 (2018). We must decide whether § 701(a)(2) precludes judicial review of the denial of Perez's U visa petition by USCIS.

In *Spencer Enterprises, Inc. v. United States*, 345 F.3d 683 (9th Cir. 2003) ("*Spencer*"), we decided the closely related issue of whether § 701(a)(2) precludes judicial review of the denial of an EB-5 immigrant investor visa petition by the Immigration and Naturalization Service ("INS"). We

began our analysis with the principle that § 701(a)(2) applies only in the "rare instances" where "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Spencer*, 345 F.3d at 688 (quoting *Chaney*, 470 U.S. at 830). We then turned to the "statutory framework" governing immigrant investor visas. We held that there are "meaningful standards by which to review INS's action" because the agency's visa determination "is guided by the statutory requirements of the EB 5 program set out in § 1153(b)(5)." *Id*. In the case now before us, we engage in the same analysis and reach the same result as in *Spencer*.

### 1. The "No Meaningful Standard" Standard

In several immigration cases, we have held that there are meaningful standards of review and have declined to apply § 701(a)(2). *See ASSE*, 803 F.3d at 1068 (holding that agency regulations provide a meaningful standard by which to review the State Department's sanctioning of a third-party program sponsor participating in the Exchange Visitor Program); *Gonzalez-Caraveo v. Sessions*, 882 F.3d 885, 893 (9th Cir. 2018) (holding that the factors enumerated in a precedential Board of Immigration Appeals ("BIA") decision provide a "sufficiently meaningful standard" by which to evaluate the denial of a request for administrative closure); *Taslimi v. Holder*, 590 F.3d 981, 986 (9th Cir. 2010) (holding that there is a meaningful standard by which to review whether a petitioner has filed for asylum within a "reasonable period" after changed circumstances because agency regulations "provide a non-exhaustive list of potential changed circumstances" and require the IJ to "consider an applicant's delayed awareness of changed circumstances").

Only where there is truly "no law to apply" have we found an absence of meaningful standards of review. *Spencer*, 345 F.3d at 688 (quoting *Chaney*, 470 U.S. at 830). In *Ekimian v. INS.*, 303 F.3d 1153 (9th Cir. 2002), for example, we held that we could not review the BIA's refusal to reopen deportation proceedings sua sponte because, although the BIA allowed for reopening in "exceptional situations," no statute, regulation, or case law defined "exceptional situations." *Id*. at 1156–59. We later clarified that we may review BIA decisions denying sua sponte reopening "for the limited purpose of reviewing the reasoning behind the decisions for legal or constitutional error" because in that instance there is "law to apply." *Bonilla v. Lynch*, 840 F.3d 575, 588 (9th Cir. 2016). Similarly, in *Idrees v. Barr*, 923 F.3d 539 (9th Cir. 2019), we held that the BIA's decision not to certify Idrees's ineffective assistance of counsel claim was unreviewable, absent a claim of constitutional or legal error, because the BIA had not "elaborated on which circumstances are considered to be exceptional and thus sufficient to merit certification." *Id*. at 542–43.

Our non-immigration cases addressing § 701(a)(2) engage in the same analysis. In *Hyatt v. Office Management & Budget*, 908 F.3d 1165 (9th Cir. 2018), for example, we considered the Paperwork Reduction Act ("PRA"), which directs the Office of Management and Budget ("OMB") to "take two distinct actions when it receives a petition to determine whether an individual is legally obligated to respond to a collection of information." *Id.* at 1174. The agency must (1) respond within 60 days with a determination of whether the individual is obligated to provide the information; and (2) take "appropriate remedial action, if necessary." 44 U.S.C. § 3517(b). We held that the first

action is reviewable because "the standards for making such a determination are specified by the PRA," but that the second action is "committed to the agency's discretion" because "[t]here is no express standard in the PRA to guide the OMB in determining whether any particular remedy is either 'appropriate' or 'necessary.'" *Hyatt*, 908 F.3d at 1174.

"[T]he mere fact that a statute contains discretionary language does not make agency action unreviewable." *Beno v. Shalala*, 30 F.3d 1057, 1066 (9th Cir. 1994). As long as there is a "meaningful standard against which to judge the agency's exercise of discretion," judicial review is available. *Chaney*, 470 U.S. at 830. Indeed, inherently discretionary standards may themselves be sufficiently meaningful to support judicial review for abuse of discretion. *See ASSE*, 803 F.3d at 1071 ("Section 701(a)(2) . . . has never been thought to put all exercises of discretion beyond judicial review. Indeed, 'the APA itself commits final agency action[s] to our review for 'abuse of discretion.'"") (quoting *Pinnacle*, 648 F.3d at 720). In fact, courts routinely treat discretion-laden standards as providing "law to apply." *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 411 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) (holding that § 701(a)(2) does not preclude judicial review of agency determination that a "feasible and prudent alternative" was lacking); *Pac. Nw. Generating Co-op. v. Bonneville Power Admin.*, 596 F.3d 1065, 1077 (9th Cir. 2010) (holding that the statutory requirement to operate in a manner "consistent with sound business principles" provided a meaningful standard of review); *City of Los Angeles v. U.S. Dep't of Commerce*, 307 F.3d 859, 869 n.6 (9th Cir. 2002) (holding that a statute requiring the Secretary to use statistical sampling "if he considers it feasible" provided a meaningful standard by

which to review the Secretary's decision not to use sampling); *Newman v. Apfel*, 223 F.3d 937, 943 (9th Cir. 2000) (holding that § 701(a)(2) does not preclude review of the Commissioner's interpretation and application of the statutory terms "reliable" and "currently available"); *Beno*, 30 F.3d at 1067 (9th Cir. 1994) (holding that an agency determination that a waiver is "likely to assist in promoting the objectives" of a benefits program is reviewable because the program's objectives are "set forth with some specificity" in the statute); *Cty. of Esmeralda v. U.S. Dep't of Energy*, 925 F.2d 1216, 1217–19 (9th Cir. 1991) (holding that although the Nuclear Waste Policy Act specified no factors for deciding whether to designate a county near the Yucca Mountain nuclear waste repository an "affected unit of local government," a judicially manageable standard "readily presents itself" because a court can consider whether the Secretary "meaningfully consider[ed]" the impact on the county); *Keating v. FAA*, 610 F.2d 611, 612 (9th Cir. 1979) (holding that an agency's charge to grant exemptions "in the public interest" provided a standard that was sufficiently meaningful for judicial review).

These cases demonstrate how rarely there is no "meaningful standard against which to judge the agency's exercise of discretion." *Chaney*, 470 U.S. at 830. They also demonstrate that there are meaningful standards to apply in this case. As in *Spencer*, we need look no further than the governing statutes.

### 2. Meaningful Standards in the U Visa Statutory Framework

As noted above, U visa determinations are governed by 8 U.S.C. § 1101(a)(15)(U) and § 1184(p). Section

1101(a)(15)(U) provides that a petitioner is eligible for a U visa if the petitioner (1) has suffered "substantial physical or mental abuse" as a result of having been a victim of qualifying criminal activity; (2) "possesses information" about qualifying criminal activity; and (3) "has been helpful, is being helpful, or is likely to be helpful" to an authority "investigating or prosecuting" qualifying criminal activity. 8 U.S.C. § 1101(a)(15)(U)(i). Section 1184(p) establishes application procedures for U visa petitioners, including the requirement that they obtain "a certification from a Federal, State, or local law enforcement official, prosecutor, judge, or other Federal, State, or local authority investigating criminal activity." 8 U.S.C. § 1184(p)(1). It also establishes agency duties, including the duty to "consider any credible evidence relevant to the petition." 8 U.S.C. § 1184(p)(3)–(4). This statutory framework affords "meaningful standards" for reviewing claims challenging USCIS's compliance with that framework.

Our dissenting colleague disagrees. The dissent points out that regulations grant USCIS "sole jurisdiction" over U visa petitions and "sole discretion" to determine the value of petitioner evidence. *See* 8 C.F.R. §§ 214.14(c)(1), 214.14(c)(4). But the statutes, which are distinct from the regulations, use no such language. *See Spencer,* 345 F.3d at 688 ("[W]e need not look to regulations or agency practice because the statutory framework provides meaningful standards by which to review INS's action."). Further, and more important, it does not follow from the fact that USCIS is the agency with "sole jurisdiction" to issue U visas that a *court* is without jurisdiction to review USCIS's decision. As will be explained in more detail below, an agency's sole discretionary authority is not inconsistent with judicial review of the agency's exercise of that discretion.

The dissent relies on language in 8 U.S.C. § 1101(a)(15)(U)(i), which provides that the "Secretary of Homeland Security *determines*" whether an alien meets the substantive requirements of the U visa program. (Emphasis added.)     However, unreviewable discretion does not necessarily follow from an agency's "determination."  Some determinations are governed by strict criteria.  Others are not. Even if a determination is discretionary, it may still be rooted in a set of requirements or standards, as the statutes here set forth.   *See, e.g.*, *Spencer*, 345 F.3d at 688 ("Although 8 U.S.C. § 1154(b) instructs that the Attorney General should 'determine' whether the facts alleged by the visa petitioner are true and whether the petitioner is eligible for a visa under § 1153(b)(5), this determination is guided by the statutory requirements of the EB 5 program set out in § 1153(b)(5).")

Finally, the dissent argues that language in 8 U.S.C. § 1184(p)(2)(A), which states that no more than 10,000 aliens "may be issued" U visas in any fiscal year, is evidence of unreviewable discretion.  This provision is a limit on the number of U visas that can be issued in a given year.  It says nothing about the criteria for determining eligibility for a visa.

In short, the statutory framework provides meaningful standards under which to review the exercise of USCIS's authority to issue U visas. The conclusion that there are meaningful standards, however, does not necessarily end an inquiry in a particular case.  "In deciding whether agency action is committed to agency discretion by law, it is not significant that there may be law, in the abstract, that could possibly be applied." *Ariz. Power Auth. v. Morton*, 549 F.2d 1231, 1239–40 (9th Cir. 1977) (citing *Strickland v. Morton*, 519 F.2d 467, 470 & n.4 (9th Cir. 1975)).  "Instead, we must

determine whether in this particular case there is any specific law to apply." *Id*. In other words, "it is only in the context of [Perez's] complaint that we can determine if there is law to be applied in the instant case." *Strickland*, 519 F.2d at 470.

Moreover, "the existence of judicial review is only the start: the standard for review must also be determined" and "[f]or that we must look to § 706 of the [APA]." *Volpe*, 401 U.S. at 413. Under the APA, our review is limited to assessing whether a U visa determination "was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; in violation of a statutory, procedural, or constitutional requirement; or unsupported by "substantial evidence." 5 U.S.C. § 706(2)(A)–(E).

### 3. Perez's APA claims

Perez makes three principal claims under the APA. First, he claims that USCIS acted contrary to law because it "fail[ed] to consider all credible evidence." In particular, Perez argues that USCIS failed to consider his anti-harassment order petition and relevant parts of the police report, which he claims show "that the suspect made threats against [his] life." The statutory mandate that USCIS "consider any credible evidence relevant to the petition," 8 U.S.C. § 1184(p)(4), provides a meaningful standard by which to review this claim. The standard of review to be applied to this question on remand is whether USCIS acted contrary to § 1184(p)(4) or in a manner that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A), (C).

Second, Perez claims that USCIS's "determination that felony harassment does [not] constitute qualifying criminal

activity is contrary to the plain language of the statute." That language provides that a qualifying crime must "involv[e]" an enumerated criminal activity or "any similar activity." 8 U.S.C. §1101(a)(15)(U)(iii). Perez argues that USCIS made a mistake of law because felony harassment "involves" the enumerated crime of felonious assault and because USCIS "misinterpreted [Washington] state law on felony harassment and felony assault" when it concluded that felony harassment is not "substantially similar" to felonious assault. The statutory definition of qualifying criminal activity at 8 U.S.C. § 1101(a)(15)(U)(iii), the accompanying regulation at 8 C.F.R. § 214.14(a)(9), and Washington state law provide meaningful standards for reviewing this claim of legal error.

The standard of review on this is not entirely clear. The general rule under the APA is that a "reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. But § 706 "does not specify the standard of review a court should use in 'determin[ing] the meaning' of an ambiguous rule." *Kisor v. Wilkie*, 139 S.Ct. 2400, 2419 (2019) (plurality opinion) (alteration in original); *see also Chrysler Corp. v. U.S. Envtl. Prot. Agency*, 631 F.2d 865, 884 (D.C. Cir. 1980) ("Although this court has the duty under the [APA] to 'decide all relevant questions of law,' we recognize that the special expertise of [the agency] in interpreting the legislation which it is called upon to administer requires that we defer to the judgment of the Agency where that judgment is reasonable and is consistent with the language and purpose of the legislation.") (citation omitted). We thus leave it for the district court to determine, in the first instance, the standard of review to apply on remand, including whether *Chevron* or *Auer* deference is appropriate. *See Chevron,*

*U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–44 (1984); *Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Kisor*, 139 S. Ct. at 2422–23 (upholding *Auer* deference); *Campos-Hernandez v. Sessions*, 889 F.3d 564, 568–69 (9th Cir. 2018) (discussing both *Chevron* and *Auer* deference).

Third, Perez claims that USCIS's factual finding that "felony harassment was not detected by law enforcement" was erroneous. The government argues that we cannot review its factual findings because its regulations provide that "USCIS will determine, *in its sole discretion*, the evidentiary value of previously or concurrently submitted evidence, including [the certification form]." 8 C.F.R. § 214.14(c)(4) (emphasis added). We rejected a similar argument in *ASSE*. We explained that

> where [the agency] has reserved to itself . . . certain decisions as within its 'discretion,' . . . *or even its 'sole discretion,'* . . . we will take into account the [agency's] reservation and expertise and accord it the proper deference. *But that does not deprive us of the right to review its actions for an abuse of its discretion or to determine if its actions were otherwise arbitrary and capricious*.

803 F.3d at 1071 (citations omitted) (emphases added).

The same standard of review applies to this question. In reviewing a decision of the USCIS, the court should give due deference to the agency's expertise. But to the extent the petitioner challenges USCIS's decision under §706(2)(A), a court can review it, as appropriate, under the deferential standards of "abuse of discretion" or "substantial evidence."

*See ASSE*, 803 F.3d at 1072 ("'[A]s a practical matter, the arbitrary and capricious standard incorporates the substantial evidence test,' and we use that test for review of agency factfinding in informal proceedings as well.") (quoting *Ursack Inc. v. Sierra Interagency Black Bear Grp.*, 639 F.3d 949, 958 n.4 (9th Cir. 2011)). "[S]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Bonnichsen v. United States*, 367 F.3d 864, 880 n.19 (9th Cir. 2004)). Review for substantial evidence is generally confined to a review of the administrative record, which in this case includes Perez's U visa petition packet and the agency's decisions denying Perez's petition. *See Volpe*, 401 U.S. at 420; *see also* 5 U.S.C. § 706 ("[T]he court shall review the whole record or those parts of it cited by a party[.]").

## B.  § 1252(a)(2)(B)(ii) of the IIRIRA

When Congress enacted IIRIRA in 1996, it replaced the judicial review scheme of the Immigration and Nationality Act with a more restrictive scheme, codified at 8 U.S.C. § 1252. *See Reno v. American-Arab Anti-Discrimination Comm*., 525 U.S. 471, 475 (1999). Section 1252(a)(2)(B) provides:

> **(B) Denials of discretionary relief**
>
> Notwithstanding any other provision of law (statutory or nonstatutory) . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—

(i) any judgment regarding the granting of relief under section 1182(h) [waiver of inadmissibility based on certain criminal offenses], 1182(i) [waiver of inadmissability based on fraud or misrepresentation], 1229b [cancellation of removal], 1229c [permission for voluntary departure], or 1255 [adjustment of status] of this title, or

(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security *the authority for which is specified* under this subchapter [8 U.S.C. §§ 1151–1381] *to be in the discretion of the Attorney General or the Secretary of Homeland Security*, other than the granting of relief under section 1158(a) of this title [relating to asylum].

8 U.S.C. § 1252(a)(2)(B) (alterations and emphases added). We must decide whether clause (ii) strips us of jurisdiction to review Perez's action. That is, we must decide whether the authority to deny a U visa is specified to be in the discretion of the Attorney General or the Secretary of Homeland Security, in the sense required to trigger § 1252(a)(2)(B)(ii).

We interpreted § 1252(a)(2)(B)(ii) in *Spencer*. We concluded that § 1252(a)(2)(B)(ii) applies only if two conditions are met. First, "the language of the statute in question must provide the discretionary authority." 345 F.3d at 689. Second, the statute must provide "pure discretion, rather than discretion guided by legal standards." *Id*. at 690. In other words, "if the statutory provision granting the

Attorney General power to make a given decision also sets out specific standards governing that decision, the decision is not 'in the discretion of the Attorney General.'" *ANA*, 393 F.3d at 892.  We held in *Spencer* that § 1252(a)(2)(B)(ii) does not preclude judicial review of EB 5 immigrant investor visa determinations because 8 U.S.C. § 1153(b)(5), which grants the Attorney General authority to "determine" a petitioner's eligibility for such a visa, establishes standards that the Attorney General must following when making that determination.  345 F.3d at 691–92.

The Supreme Court's decision in *Kucana v. Holder*, 558 U.S. 233 (2010), reinforces our interpretation of § 1252(a)(2)(B)(ii) in *Spencer*.  The issue in *Kucana* was whether § 1252(a)(2)(B)(ii) applies to "determinations declared discretionary by the Attorney General himself through regulation."  *Id*. at 237.  The Court held that § 1252(a)(2)(B)(ii) applies "only when Congress itself set out the Attorney General's discretionary authority in the statute." *Id*. at 247.  The Court did not directly address the related question of what kind of statutory language triggers § 1252(a)(2)(B)(ii).  But the Court made several observations that support *Spencer*'s answer to that question.  First, the Court explained that § 1252(a)(2)(B)(ii) "speaks of authority 'specified'—not merely assumed or contemplated—to be in the Attorney General's discretion," and that "'[s]pecified' is not synonymous with 'implied' or 'anticipated.'"  *Id*. at 243 n.10.  Second, the Court provided three examples of statutory provisions to which § 1252(a)(2)(B)(ii) applies: "§ 1157(c)(1) (discretion to admit refugees 'determined to be of special humanitarian concern to the United States'); § 1181(b) (discretion to waive requirement of documentation for readmission); § 1182(a)(3)(D)(iii) (discretion to waive, in certain cases, inadmissibility of aliens who have affiliated

with a totalitarian party)." *Id*. at 248. All three provisions satisfy both *Spencer* conditions for unreviewable discretion. Each contains language committing an action or decision to the "discretion" or "satisfaction" of the Attorney General, and none provides the Attorney General with statutory standards that constrain that action or decision. *See, e.g.*, 8 U.S.C. § 1157(c)(1) ("[T]he Attorney General may, in the Attorney General's discretion and pursuant to such regulations as the Attorney General may prescribe, admit any refugee who is not firmly resettled in any foreign country, is determined to be of special humanitarian concern to the United States, and is admissible[.]"). Third, the Court emphasized that the "presumption favoring judicial review of administrative action" should guide courts' interpretation of § 1252(a)(2)(B)(ii). *Kucana*, 558 U.S. at 251. It takes "clear and convincing evidence" of a contrary congressional intent to dislodge this presumption. *Id*. at 252.

Applying *Spencer* to the case before us, we conclude for two reasons that § 1252(a)(2)(B)(ii) does not preclude judicial review. First, the U visa statutory provisions at 8 U.S.C. §§ 1101(a)(15)(U) and 1184(p) do not "specify" that the authority to grant or deny a U visa petition is in the discretion of the Secretary of Homeland Security. In fact, neither § 1101(a)(15)(U) nor § 1184(p) uses the word "discretion" or any synonym. Agency *regulations* provide that "USCIS will determine, in its sole discretion, the evidentiary value of previously or concurrently submitted evidence." 8 C.F.R. § 214.14(c)(4). But regulatory declarations of discretion, standing alone, do not trigger § 1252(a)(2)(B)(ii). *Kucana*, 558 U.S. at 237 ("We hold that the key words 'specified under this subchapter' refer to statutory, but not to regulatory, specifications."). Second, both § 1101(a)(15)(U) and § 1184(p) establish statutory standards that constrain the

Secretary's U visa determinations.  As detailed above, these statutes prescribe eligibility criteria, application procedures, and agency duties, all of which guide the Secretary's determination whether to grant or deny U visa petitions. U visa determinations are thus not "wholly discretionary" as required by *Spencer*, and § 1252(a)(2)(B)(ii) does not bar review of Perez's action.

The dissent calls attention to our recent decision in *Poursina v. USCIS*, 936 F.3d 868 (9th Cir. 2019), where we held that § 1252(a)(2)(B)(ii) precludes review of USCIS decisions to deny a national-interest waiver.  Contrary to the contention of the dissent, *Poursina* supports our decision in this case.  First, *Poursina* underscores that it is the governing statutes that should guide our analysis, rather than USCIS regulations that purport to grant the agency "sole discretion" to the agency.  *See id.* at 871 ("[I]t is not enough that a decision *is* discretionary. . . ; instead, Congress must *state* that the government has such discretion.") (Emphasis in original.)  Second, the statute in this case differs from that in *Poursina*.  There, the statute provided that "the Attorney General may, when the Attorney General deems it to be in the national interest, waive the requirement[] . . . that an alien's services in the sciences, arts, professions, or business be sought by an employer in the United States."  8 U.S.C. § 1153(b)(2)(B)(i).  We held that the "invocation of the 'national interest' is a core example of a consideration that lacks a judicially manageable standard of review," as it calls for "broader economic and national-security considerations." *Poursina*, 936 F.3d at 871, 874.  We further noted that USCIS's interpretation of the statute, which established a framework analyzing "substantial merit," "national importance," and "benefit[s] to the United States," *id.* at 874 (quoting *In re Dhanasar*, 26 I. & N. Dec. 884, 889 (USCIS

AAO 2016)), imposed "no such thing" as "objective criteria" on USCIS's discretion. *Id.* By comparison, the statute in this case mandates specific eligibility requirements, application procedures, and agency duties. *See* 8 U.S.C. §§ 1101(a)(15)(U)(i), 1101(a)(15)(U)(iii), 1184(p)(1)–(4).

The dissent also cites two unpublished decisions to suggest that we have already determined that we lack jurisdiction to review U visa denials. Not only are these cases not binding. They are also inapposite. In the first, *Eun Kyeong Seo v. Holder*, 358 F. App'x 884 (9th Cir. 2009), we held that we "lack[ed] jurisdiction over [USCIS's] determinations regarding U Visas." However, for this proposition, we cited *Ramirez Sanchez v. Mukasey*, 508 F.3d 1254 (9th Cir. 2007) (per curiam), in which we remanded to the BIA to consider new regulatory guidance for the issuance of U visas. We said nothing in *Ramirez Sanchez* about our jurisdiction to review a decision denying a U visa. In the second, *Chang Young Jung v. Holder*, 393 F. App'x 530 (9th Cir. 2010), we held that we lacked jurisdiction over challenge to a U visa denial because the challenge had not been made in the district court. We did not address our jurisdiction to review a properly made challenge.

Finally, the dissent expresses concern that today's decision "opens the proverbial floodgates." This fear is exaggerated. The vast majority of U visa petitions are granted. Every fiscal year since 2010, USCIS has approved an average of about 10,000 U visa petitions. In that same time period, it annually denied an average of about 2,400 petitions. An unknown fraction of those denials will be appealed. *See* USCIS, *Number of Form I-918, Petition for U Nonimmigrant Status by Fiscal Year, Quarter, and Case Status (FY 2009–2019)*, available at http://www.uscis.gov/s

ites/default/files/USCIS/Resources/Reports%20and%20Stu
dies/Immigration%20Forms%20Data/Victims/I918u_visast
atistics_fy2019_qtr2.pdf (last visited Sept. 20, 2019).

## Conclusion

We hold that 8 U.S.C. § 1101(a)(15)(U) and 8 U.S.C.
§ 1184(p) provide meaningful standards by which to review
USCIS's denial of Perez's U visa, and that 8 U.S.C.
§ 1252(a)(2)(B)(ii) does not strip federal courts of jurisdiction
to review that decision. We remand to the district court to
allow it to apply those standards in this case.

**REVERSED and REMANDED**.

CALLAHAN, Circuit Judge, dissenting:

Congress, in creating "U nonimmigrant status" or
"U visas," vested with the Secretary of Homeland Security
sole jurisdiction over U visas, sole discretion in determining
the evidentiary value of the certification forms accompanying
a U visa petition, and absolute discretion in deciding whether
to grant (or deny) U visa petitions and whether to
subsequently revoke U visa status. The Supreme Court has
recognized that where Congress commits decisions to agency
discretion, with "no meaningful standard" for judicial review,
we cannot review such decisions. *Heckler v. Chaney*,
470 U.S. 821, 830 (1985).

The majority, however, in misconstruing § 1252 of the
INA and § 701 of the APA and ignoring the consistent
opinions of our sister circuits, plunges us into the standardless

review of thousands of discretionary decisions by the Secretary of Homeland Security. The majority opinion devalues the separation of powers and creates a circuit split by venturing into the forbidden territory of permitting judicial review over the discretionary denials of U visas. The majority opinion opens the proverbial floodgates to courts reviewing the USCIS's decision on the approximately 250,000 U visa petitions,[1] as well as possibly other visa petitions currently pending before the USCIS seeking discretionary relief.

Because the majority opinion's arrogation of power unto itself is wrong, I adamantly dissent. Because the district court properly understood the judiciary's exclusion from reviewing discretionary agency decisions as prescribed by Congress, I would affirm the district court's dismissal for lack of jurisdiction.

## I.

In 2000, Congress created a limited discretionary category allowing certain aliens who would not otherwise be permitted to remain in the United States to stay and even pursue a pathway to permanent residence. This new category (known as "U nonimmigrant status" or "U visa") provides certain aliens with nonimmigrant status under section 1101(a)(15)(U) of the Immigration and Nationality Act ("INA"). Congress's purpose behind "creat[ing] a new nonimmigrant visa

---

[1] USCIS, *Number of Form I-918, Petition for U Nonimmigrant Status by Fiscal Year, Quarter, and Case Status (FY 2009–2019)*, *available at* https://www.uscis.gov/sites/default/files/USCIS/Resources/Reports%20 and%20Studies/Immigration%20Forms%20Data/Victims/I918u_visasta tistics_fy2019_qtr2.pdf (last visited Aug. 29, 2019).

classification" was to "strengthen the ability of law enforcement agencies to detect, investigate, and prosecute cases of domestic violence, sexual assault, trafficking of aliens, and other crimes," while also "offering protection to victims of such offenses in keeping with the humanitarian interests of the United States." H.R. REP. NO. 106-939, at 72 (2000) (Conf. Rep.); Victims of Trafficking & Violence Protection Act of 2000 ("VTPA"), Pub. L. No. 106-386, § 1513(a), 114 Stat. 1533–37 (2000). The U visa was created with a particular focus on women and children who, according to Congress's findings, "are often targeted to be victims of crimes committed against them in the United States." H.R. REP. NO. 106-939, at 71. Because alien victims may not have legal status and may be reluctant to report being victims to a crime or to help in the investigation or prosecution of criminal activity due to fear of removal, Congress "[p]rovid[ed] temporary legal status to aliens who have been severely victimized by criminal activity" in order to "comport[] with the humanitarian interests of the United States." *Id.* at 72. Congress emphasized that "this section gives the Attorney General discretion to convert the status of such nonimmigrants to that of permanent residents when doing so is justified on humanitarian grounds, for family unity, or is otherwise in the public interest." *Id.*

To be eligible for a U visa, a nonimmigrant alien must meet the following four statutory requirements:

> **(I)** the alien has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity described in clause (iii);

**(II)** the alien (or in the case of an alien child under the age of 16, the parent, guardian, or next friend of the alien) possesses information concerning criminal activity described in clause (iii);

**(III)** the alien (or in the case of an alien child under the age of 16, the parent, guardian, or next friend of the alien) has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official, to a Federal, State, or local prosecutor, to a Federal or State judge, to the Service, or to other Federal, State, or local authorities investigating or prosecuting criminal activity described in clause (iii); and

**(IV)** the criminal activity described in clause (iii) violated the laws of the United States or occurred in the United States (including in Indian country and military installations) or the territories and possessions of the United States[.]

8 U.S.C. § 1101(a)(15)(U)(i). Subsection (iii) sets forth the types of "criminal activity . . . or any similar activity in violation of Federal, State, or local criminal law" required to support a U visa application.[2] 8 U.S.C. § 1101(a)(15)(U)(iii).

---

[2] The type of serious criminal activity that Congress specified to justify providing temporary (and even permanent) residency to certain aliens who would not otherwise be permitted to remain in the United States include: "rape; torture; trafficking; incest; domestic violence; sexual assault; abusive sexual contact; prostitution; sexual exploitation; stalking;

Congress presumably specified particularly serious and violent crimes with the intent to protect "severely victimized" aliens. H.R. REP. NO. 106-939, at 72. Relevant to Perez, a qualifying criminal activity under the statute includes "felonious assault." *Id.*

In a U visa petition, the petitioner must include a Form I-918, Supplement B ("the certification"), which is:

> [A] certification from a Federal, State, or local law enforcement official, prosecutor, judge, or other Federal, State, or local authority investigating criminal activity described in section 1101(a)(15)(U)(iii) of this title. . . . This certification shall state that the alien "has been helpful, is being helpful, or is likely to be helpful" in the investigation or prosecution of criminal activity described in section 1101(a)(15)(U)(iii) of this title.

8 U.S.C. § 1184(p)(l); *see also* 8 C.F.R. § 214.14(c)(2)(i).

USCIS is the agency responsible for determining, adjudicating, and revoking U visas. *See* New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53,014 (Sept. 17, 2007)

---

female genital mutilation; being held hostage; peonage; involuntary servitude; slave trade; kidnapping; abduction; unlawful criminal restraint; false imprisonment; blackmail; extortion; manslaughter; murder; felonious assault; witness tampering; obstruction of justice; perjury; fraud in foreign labor contracting (as defined in section 1351 of Title 18); or attempt, conspiracy, or solicitation to commit any of the above mentioned crimes[.]" 8 U.S.C. § 1101(a)(15)(U)(iii).

(to be codified at 8 C.F.R. pt. 103, 212).[3]  "USCIS has sole jurisdiction over all petitions for U nonimmigrant status." 8 C.F.R. § 214.14(c)(1).  USCIS will "determine, in its sole discretion, the evidentiary value of previously or concurrently submitted evidence, including Form I-918, Supplement B, 'U Nonimmigrant Status Certification.'"  72 Fed. Reg. 53,038.  Section 1184(a)(1) "authorizes the Secretary of Homeland Security to prescribe, by regulation, the time and conditions of admission of any nonimmigrant" and "[i]mplicit in this authority is the authority to prescribe the conditions under which nonimmigrant status may be revoked."  72 Fed. Reg. 53,030.

## II.

Perez asserts that he was harassed in violation of Washington State law, Wash. Rev. Code § 9A.46.020 (2011), by two individuals to whom Perez had lent money.  Perez told the reporting officer with the Renton Police Department that one individual "threatened to place Perez in jail if he keeps asking for his money back"; he told Perez "he would make him disappear"; and Perez "was scared that [the individual] might do something to him."  However, according to the reporting officer, these allegations "were not defined enough for me to file harassment charges."  In fact, on the certification form that accompanied his U visa petition, the Commander wrote: "This was an informational case and no

---

[3] Congress enacted the Violence Against Women and Department of Justice Reauthorization Act of 2005, directing the Security of Homeland Security to promulgate regulations implementing, inter alia, section 1513 of VTVPA (codified at 8 U.S.C. § 1184(p)(l)).  As a result, USCIS published an Interim Rule to govern the creation of U nonimmigrant status.  *See* 72 Fed. Reg. 53,014.

charges were filed." Additionally, the Commander noted that Perez presented "no known physical injury." In denying Perez's U visa petition, USCIS stated in the notification letter: "You have not established your eligibility for the desired classification and [USCIS] cannot reach a favorable decision." Perez had argued that he was a victim of "harassment," which even though it is not an enumerated qualifying crime under the statute, he alleged "involved and/or was similar to felonious assault," which is an enumerated qualifying crime. The USCIS, however, explained that Perez did not qualify as a victim of a "qualifying criminal activity":

> As proof to satisfy this requirement, you submitted a copy of an [sic] temporary anti-harassment order that was unable to be served. On March 25, 2014, you were requested to submit additional evidence to demonstrate that the crime, harassment; would be considered a crime related to those listed in regulation. You responded on June 18, 2014, with a letter from your attorney but you did not provide sufficient evidence to prove that your crime of harassment is similar to a certified crime listed on the Supplement B.

> You were also requested in your request for evidence letter that was sent to you on March 25, 2014, to provide a supplement B that was dated within six (6) months of the date of the petition. You responded with a letter from your attorney on June 18, 2014 but did not provide a new Supplement B signed within the regulation time requirements.

The evidence, as presented, does not establish that you have been a victim of qualifying criminal activity. The record does not contain satisfactory evidence to establish your eligibility under this requirement.

On appeal, the Administrative Appeals Office ("AAO") found that Perez did not establish that he was a victim of a qualifying crime and thus dismissed the appeal. Perez asserted that even though the Renton Police Department listed on the certification that the alleged crime was one of "harassment," he was actually a victim of "felony harassment," which involves or is substantially similar to "felony assault," an enumerated qualifying crime. The AAO explained, "the nature and elements of the harassment offense must be substantially similar to one of the qualifying criminal activities in the statutorily enumerated list" and the "inquiry, therefore, is not fact-based, but rather entails comparing the nature and elements of the statutes in question." In comparing the statutes of harassment under Wash. Rev. Code § 9A.46.020[4] and of felonious assault, the AAO concluded

---

[4] Under Washington law, "[a] person is guilty of harassment if:

   (a) Without lawful authority, the person knowingly threatens:

      (i) To cause bodily injury immediately or in the future to the person threatened or to any other person; or

      (ii) To cause physical damage to the property of a person other than the actor; or

      (iii) To subject the person threatened or any other person to physical confinement or restraint; or

that "[n]o elements of harassment under Wash. Rev. Code §§ 9A.46.020 are similar to felonious assault under Wash. Rev. Code §§ 9A.36.011, 9A.36.021, and 9A.36.031."[5]

---

> (iv) Maliciously to do any other act which is intended to substantially harm the person threatened or another with respect to his or her physical or mental health or safety; and

> (b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out. "Words or conduct" includes, in addition to any other form of communication or conduct, the sending of an electronic communication.

Wash. Rev. Code § 9A.46.020(1). Felony harassment, under the same statute, requires, inter alia, that a person harasses another person "by threatening to kill the person threatened or any other person." Wash. Rev. Code § 9A.46.020(2)(b)(ii).

[5] In identifying statutory elements, the AAO looked to Washington common law:

> Assault is not defined by Washington law, so Washington courts apply the common law definition of assault in criminal cases. *Clark v. Baines*, 84 P.3d 245, 247 n.3 (Wash. 2004). Three common law definitions of criminal assault are recognized in Washington: "(1) an attempt, with unlawful force, to inflict bodily injury upon another; (2) an unlawful touching with criminal intent; and (3) putting another in apprehension of harm whether or not the actor intends to inflict or is capable of inflicting that harm." *Id.* (quoting *State v. Walden*, 841 P.2d 81, 83 (Wash. Ct. App. 1992)). Felonious assault under the Washington Criminal Code involves an assault with a deadly weapon or that causes bodily injury. *See* Wash. Rev. Code Ann. §§ 9A.36.011 and 9A.36.021. Felonious assault in Washington also includes assault against certain

The AAO further rejected Perez's assertion that he suffered felonious assault—based on the argument that the harassment "involved a threat to kill him that placed him in apprehension of harm"—finding that Perez did not allege anything other than "harassment" in his U visa petition. Nothing in his U visa petition indicates that felony harassment was the basis of his Form I-918 Supplement B. In assessing the elements of the crime that he actually asserted (i.e., harassment), the AAO found that there was no evidence in the record to support a finding that Perez was a victim of any qualifying criminal activity.

Perez filed a motion to reconsider the AAO's decision, which was denied on the basis that he "has not demonstrated that he was a victim of qualifying criminal activity." First, the AAO found that "the record as a whole does not establish that the certifying agency detected or investigated felony harassment," but rather the only crime listed on the certification form was "harassment, which is a gross misdemeanor under Washington law and is not an enumerated offense under section 101(a)(15)(U)(iii) of the Act." The AAO next found that even if felony harassment had been detected by the Renton Police Department, Perez "has not demonstrated that it is substantially similar to the qualifying criminal activity of felonious assault." Based on a comparison of the statutes in question (not a fact-based inquiry), the AAO concluded:

> The statutory elements of felony harassment under Wash. Rev. Code section

---

protected classes and assault with intent to commit a felony. Wash. Rev. Code Ann. §§ 9A.36.021 and 9A.36.031.

9A.46.020(2)(b)(ii) . . . involve[] the communication of a threat to kill and placing the threatened person in reasonable fear that the threat will be carried out through words or conduct. However, felony assault does not require a communication of a threat for a conviction. *State v. Mandanas*, 262 P.3d 522, 526–27 (Wash. Ct. App. 2011). Additionally, a felony harassment conviction does not require an added aggravating factor beyond the threat, such as the use of a weapon or commission of the offense with the intention to commit a felony. Moreover, contrary to [Perez]'s assertions on motion, Washington case law indicates that a plain reading of the harassment and assault statutes shows that the state legislature "intended to distinguish felony harassment and second degree assault as distinct offenses." *Mandanas*, 262 P.3d at 526–27.[] In fact, the *Mandanas* court specifically held that second degree assault and harassment had different elements. *Id.* at 526.

Perez filed an APA suit in the United States District Court for the Western District of Washington against the Secretary of Homeland Security, the Acting Director of the USCIS, and others, alleging the denial of his U visa was erroneous because: the Renton Police Department at least "detected" that he was a victim of felony harassment; he demonstrated that the detected felony harassment involved felonious assault; the agencies failed to consider credible and material evidence; and he could establish eligibility for a U visa. The parties filed cross motions for summary judgment.

In dismissing the action for lack of subject matter jurisdiction, the district court concluded that this case fell into the APA § 701(a)(2)'s exclusion from judicial review of an agency's discretionary decision. The court noted: "USCIS has 'sole jurisdiction' over U-visa petitions and 'sole discretion' to determine the evidentiary value of the petitioner's evidence when ruling on a petition," and "U-visa determinations are 'committed to USCIS' discretion by law.'" The court found, "[i]n the U-visa context, there is no judicially manageable standard by which a court can judge how USCIS should exercise its discretion." The court recognized the legal landscape of this issue in our circuit:

> In the Ninth Circuit, courts "lack[] jurisdiction over the [USCIS'] determinations regarding U Visas." *Seo v. Holder*, 358 F. App'x 884 (9th Cir. 2009) (citing *Ramirez Sanchez v. Mukasey*, 508 F.3d 1254, 1555–56 (9th Cir. 2007) (per curiam)). In addition, a district court within this Circuit recently surveyed U-visa cases and could not find "any federal court that has exercised jurisdiction over questions of a Petitioner's eligibility for a U-Visa." *Nsinano v. Sessions*, 236 F. Supp. 3d 1133, 1137 (N.D. Cal. 2017). Although Mr. Perez provided a number of cases generally supporting judicial review under the APA, he did not offer any cases where a court reviewed the agency's U-visa determination. (*See* Pl. Opp. & Reply (Dkt. #27) at 3–7.).

The court thus held that the USCIS's denial of Perez's petition was not subject to judicial review, and dismissed the

administrative appeal for lack of subject matter jurisdiction. Perez timely appealed.

## III.

We review de novo a district court's dismissal for lack of subject matter jurisdiction. *Yu-Ling Teng v. District Director, U.S. Citizenship & Immigration Servs.*, 820 F.3d 1106, 1108 (9th Cir. 2016).

## IV.

Congress's intent in creating a new nonimmigrant category was to vest to the USCIS the absolute discretionary authority over U visas with sole jurisdiction over U visa petitions, with sole discretion to determine the evidentiary value of the petitioner's evidence when ruling on a petition, and with the adjudicative authority in determining whether to grant or deny a U visa and whether to subsequently revoke such status.  To restrict USCIS's discretionary authority by allowing courts to review U visa decisions would not only contradict Congress's intent, but would breach the separation of powers by allowing courts to venture into the forbidden legislative territory.   This conclusion is compelled by § 701(a)(2) of the APA and § 1252(a)(2)(B)(ii) of the INA, which preclude judicial review of discretionary U visa decisions.

### A.

Section 701(a)(2) of the APA precludes judicial review of agency decisions where the agency action is "committed to agency discretion by law."  5 U.S.C. § 701(a)(2); *see also Heckler*, 470 U.S. at 830.  The Supreme Court has recognized

that a decision is committed to agency discretion by law when "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler*, 470 U.S. at 830; *see also Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 719 (9th Cir. 2011) (citations omitted). The statutory and regulatory U visa frameworks provide no judicially manageable standard by which a court can judge how USCIS should exercise its discretion in reviewing the denial of U visas. The applicable U visa statutes are 8 U.S.C. §§ 1101(a)(15)(U) and § 1184(p).

Section 1101(a)(15)(U)—the statutory definition of U nonimmigrant status—prescribes that an alien may be eligible for nonimmigrant status if "the Secretary of Homeland Security determines" that the alien has met the enumerated requirements. 8 U.S.C. § 1101(a)(15)(U)(i). The fact that Congress left to the Secretary of Homeland Security the power to *determine* who qualifies for this type of nonimmigrant status evinces Congressional intent that the agency is vested with the decision-making discretion. While this section defines who may qualify for a U visa, it does not compel or restrict any action by USCIS and does not specify *how* USCIS should evaluate the U visa petitions, qualifying crimes, substantial physical or mental abuse, or helpfulness requirements. Rather, the determination is left to USCIS's judgment. The statute provides no "meaningful standard" for defining the limits of that discretion. *Heckler*, 470 U.S. at 830.

Similarly, section 1184(p)—the governing procedural requirements applicable to U visas—states that "the petition filed by an alien under section 1101(a)(15)(U)(i) of this title" must be accompanied by a certification from law enforcement that provides that the alien "has been helpful, is being helpful,

or is likely to be helpful" in the investigation or prosecution of qualifying criminal activity. 8 U.S.C. § 1184(p)(1). This subsection does not provide a standard "for judging how and when an agency should exercise its discretion" in granting or denying a U visa. *Heckler*, 470 U.S. at 830. Moreover, the statute uses language that requires an exercise of discretion in determining how many aliens "*may* be issued" U nonimmigrant status each year. 8 U.S.C. § 1184(p)(2)(A) (emphasis added). Critically, by limiting the number of U visas that may be issued to 10,000 annually, Congress intended the granting and denying of U nonimmigrant status to be purely discretionary. It is unreasonable to suggest that Congress intended the courts to dictate how the Secretary of Homeland Security manages the limited number of U visas that she is authorized to grant.

The only controls Congress placed on the Secretary of Homeland Security's discretion in administering U visas were duties to: (1) provide qualifying aliens with referrals to nongovernmental organizations to advise the aliens regarding their options and resources available to them while in the United States; (2) provide the qualifying alien with employment authorization while in lawful temporary resident status; and (3) consider any credible evidence relevant when acting on the petition. 8 U.S.C. § 1184(p)(3), (4). However, the first two requirements arise only *after* the alien has been determined to be a qualifying alien, a decision Congress left to the Secretary of Homeland Security. And the latter requirement is a blanket authorization of discretionary authority to consider "*any* credible [and] relevant" evidence when "acting on any petition filed under this subsection." *Id.* § 1184(p)(4) (emphasis added). The statute does not specify *how* the agency should determine what evidence is credible and relevant, nor does it prescribe a limit to the discretion.

Instead "just as with the initial adjudication of Form I-918, the determination of what is relevant evidence and the weight to be given to that evidence will be within the *sole discretion of USCIS*."  72 Fed. Reg. 53,031 (emphasis added).

In sum, nothing in the applicable U visa statutes—§§ 1101(a)(15)(U) or 1184(p)—indicates how the USCIS should make its decision to grant or deny a U visa. Absent a reference to, let alone a specification on, how the agency should utilize its discretionary authority, the statutes fail to provide a judicially manageable standard and thus preclude judicial review.

The applicable U visa regulations reinforce that the agency has discretion over U visa application and that there are no judicially manageable standards.  An alien's eligibility for U nonimmigrant status is expressly contingent upon the USCIS's determination of the evidentiary value of materials submitted and USCIS's determination that the petitioner has met the requirements for U visa status.  *See* 8 C.F.R. § 214.14(b) (making an alien's eligibility for a U visa contingent upon demonstrating "all of the following in accordance with paragraph (c) of this section"). Paragraph (c) provides that: "USCIS has *sole jurisdiction* over all petitions for U nonimmigrant status"; an alien's eligibility for a U visa is based on being a victim of a qualifying crime; "USCIS will determine, in its *sole discretion*, the evidentiary value" of the alien's petition materials, "including Form I-918, Supplement B, 'U Nonimmigrant Status Certification'"; and "[*i*]*f USCIS determines* that the petitioner has met the requirements for U-1 nonimmigrant status, USCIS will approve the Form I-918."  *See* 8 C.F.R. §§ 214.14(c)(1)–(5) (emphasis added).

Nothing in the regulation dictates that USCIS must grant a U visa or even explains when USCIS must grant a U visa—it describes only when an alien is eligible to apply and leaves the decision to grant or deny with the USCIS. Like the applicable INA statutory provisions, nothing in the regulations describes *how* USCIS should evaluate the evidence when exercising its discretion in granting or denying a U visa. Absent a standard "for judging how and when an agency should exercise its discretion" or "for defining the limits of that discretion" in granting or denying a U visa, the decision is "committed to agency discretion by law" and thus is not judicially reviewable. *Heckler*, 470 U.S. at 830, 834–35.

## B.

I have no quarrel with the majority's sua sponte questioning of jurisdiction under § 1252(a)(2)(B)(ii) of the INA. Maj. Op. at 5; *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 687 (9th Cir. 2003) (stating that this Court has a "duty to consider subject matter jurisdiction sua sponte in every case"). However, review of § 1252(a)(2)(B)(ii) discloses no meaningful standard for judicial review. Unlike the APA analysis, the jurisdictional inquiry is governed by the statutes only, and not the regulations. *See Spencer*, 345 F.3d at 691 (evaluating whether § 1252(a)(2)(B)(ii) prescribes judicially manageable standards requires that "such standards must be found in the statutes" and that "regulations or agency practice will not make the decision reviewable").

Section 1252(a)(2)(B)(ii) provides that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security

the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . ." For the discretionary decision to strip the court of jurisdiction, (1) the "discretionary authority [must] be 'specified' under the INA" meaning "the language of the statute in question must provide the discretionary authority"; and (2) "the 'authority [must] be in the discretion of the Attorney General,'" which means having "the power to act 'according to [one's] own understanding and conscience.'" *Spencer*, 345 F.3d at 689–90 (last alteration in original) (emphasis omitted).

As noted, the applicable U visa statutes—INA's §§ 1101(a)(15)(U) and 1184(p)—give the USCIS discretion in granting or denying an alien's petition for a U visa. The USCIS "determines" whether to grant or deny a U visa and is limited in how many U visas "*may* be issued" to 10,000 annually. 8 U.S.C. §§ 1101(a)(15)(U) and 1184(p)(2)(A) (emphasis added). This statutory language "specifie[s]" discretionary authority. *Spencer*, 345 F.3d at 689; *see also Jama v. Immigration & Customs Enf't*, 543 U.S. 335, 346 (2005) (finding that Congress's use of "may"—rather than "must" or "shall"—brings along the usual presumption of discretion); *Poursina v. United States Citizenship & Immigration Servs.*, 936 F.3d 868, 873 (9th Cir. 2019) (finding that "Congress use[s] a wide range of language to commit decisions to the government's discretion," even if it chooses not to expressly use the word "discretion"). Because the U visa determination is not dictated by any statutorily prescribed legal standard, but rather measures the "power to act . . . within [the Secretary of Homeland Security's] judgment," it is a "matter[] of pure discretion." *Spencer*, 345 F.3d at 690.

Both Perez's and the majority's reliance on *Spencer Enterprises* is misplaced. In *Spencer Enterprises*, we held that neither the APA nor § 1252(a)(2)(B)(ii) barred review of USCIS's denial of an investor visa under §§ 1153(b)(5) and 1154(b) of the INA because the applicant's investor visa was not left solely to USCIS's discretion. 345 F.3d 683, 688–91 (2003). Rather, we relied on the language of §§ 1153(b)(5) and 1154(b), both of which mandated the granting of visas once the qualifying criteria were satisfied. 8 U.S.C. § 1153(b)(5)(A) (stating that "[v]isas *shall* be made available" to qualifying immigrants) (emphasis added); *id.* § 1154(b) (stating that the Attorney General "*shall* . . . approve the petition" upon determining that the petitioner is eligible) (emphasis added). We concluded that, by mandating the agency to issue the investor visas, Congress did not leave the decision to the discretion of the agency.

In contrast, the applicable U visa statutes in Perez's case, §§ 1101(a)(15)(U) and 1184(p), do not reflect a similar mandate from Congress. Rather, for U visa status, "an alien . . . files a petition for status under this subparagraph, [and] the Secretary of Homeland Security *determines*" whether the alien satisfies the enumerated elements of the statute, and Secretary of Homeland Security "*may* . . . issue[]" only 10,000 U visas annually. 8 U.S.C. §§ 1101(a)(15)(U) and 1184(p) (emphasis added). Unlike the mandatory issuing of investor visas, the granting or denying of U visas rests entirely within the USCIS's discretion, and thus, is not judicially reviewable.

Although we have not published on this issue, our unpublished decisions agree that our court lacks jurisdiction to review USCIS's denial of U visa petitions. *See, e.g.*, *Eun Kyeong Seo v. Holder*, 358 F. App'x 884 (9th Cir. 2009)

("This court lacks jurisdiction over [USCIS] determinations regarding U visas."); *Chang Young Jung v. Holder*, 393 F. App'x 530 (9th Cir. 2010) ("We lack jurisdiction to review [USCIS (emphasis added).

Moreover, we recently issued an analogous decision that "§1252(a)(2)(B)(ii) strips federal courts of jurisdiction to review USCIS's decisions to deny a national-interest waiver." *Poursina,* 936 F.3d at 873. It is difficult to square the majority's approach here with our opinion in *Poursina*. The provision at issue in *Poursina*, which requires that the Attorney General determine whether a waiver was in "the national interest," allows for more "meaningful standards" than may be gleaned from the majority's opinion.[6] In addition, the opinion in *Poursina* recognized that "Congress's use of 'may'—rather than 'must' or 'shall'—brings along the usual presumption of discretion." *Id*. at 871. Of course, there are differences between Perez's case and *Poursina*, but *Poursina* is not fairly read as supporting the majority's opinion.

---

[6] USCIS had set forth that an alien seeking a national-interest waiver must show:

> (1) that the foreign national's proposed endeavor has both substantial merit and national importance; (2) that the foreign national is well positioned to advance the proposed endeavor; and (3) that, on balance, it would be beneficial to the United States to waive the requirements of a job offer and thus of a labor certification.

*Matter of Dhanasar*, 26 I. & N. Dec. 884, 889 (2016). Nonetheless, we held that such a determination remained discretionary and not subject to judicial review.

Moreover, decisions by the Fifth, Seventh, Eleventh, and D.C. Circuits also hold that courts lack jurisdiction to review U visa petitions. *See Torres-Tristan v. Holder*, 656 F.3d 653, 659 (7th Cir. 2011) ("[J]udicial review in the circuit courts of appeals of U visa denials . . . would appear to be unprecedented. Our decisions reflect a longstanding practice of not reviewing visa denials in general"); *L.D.G. v. Holder*, 744 F.3d 1022, 1024 (7th Cir. 2014) ("[T]he decision whether to grant a U Visa is statutorily committed to the discretion of the Secretary of Homeland Security, *see* 8 U.S.C. § 1101(a)(15)(U), and is exercised through USCIS . . . ."); *Bejarano v. Homeland Sec. Dep't*, 300 F. App'x 651, 653 (11th Cir. 2008) (affirming district court's finding that it lacked subject matter jurisdiction to review denial of U visa petition because "jurisdiction over the grant or denial of a U visa . . . rests with [USCIS], and any decision by the certifying official to sign or decline to sign the status certification is discretionary"); *Semiani v. United States*, 575 F.3d 715 (D.C. Cir. 2009) ("Congress has not provided for judicial review of decisions to deny a 'U-visa' pursuant to 8 U.S.C. § 1101(a)(15)(U)."); *Ordonez Orosco v. Napolitano*, 598 F.3d 222, 226 (5th Cir. 2010) (finding that "the language of § 1184(p) makes it abundantly clear that the decision to issue a law enforcement certification [when applying for a U visa] is a discretionary one" and thus concluding that the district court correctly dismissed for lack of jurisdiction).

It is our general rule to decline to create a circuit split unless there is a compelling reason to do so. *Padilla-Ramirez v. Bible*, 882 F.3d 826, 836 (9th Cir. 2017), citing *Kelton Arms Condo. Owners Ass'n, Inc. v. Homestaead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003). Perez's case does not present such a reason.

**V.**

Indeed, Perez's case is a particularly unsuitable vehicle for expanding the judiciary's review of denials of U visas. As noted by the majority, Perez's complaint alleged that the agency (1) failed to consider all credible evidence, (2) erred in concluding that "felony harassment does not constitute a qualifying criminal activity," and (3) made an unsupported finding in concluding that "felony harassment was not detected by law enforcement." Maj. op. at 12. First, there is simply nothing to support the allegation that the agency did not consider all the evidence Perez proffered. Second, as noted, there are substantial differences between the "harassment" alleged by Perez and criminal harassment under Washington law. *See infra* at 37–40. Third, the record not only supports, but compels, the conclusion that "felony harassment was not detected by law enforcement." The record shows that Perez alleges that he loaned money to two individuals and that when he requested repayment they threatened him. He then reported this to the police and sought an anti-harassment order. But the police determined that the alleged threats were not definite enough to support the filing of harassment charges and the anti-harassment order was dismissed because the defendant was not able to be served. In sum, the only evidence that Perez "suffered substantial physical or mental abuse as a result of having been a victim of criminal activity," or had been helpful to authorities "investigating or prosecuting criminal activity," *see* 8 U.S.C. § 1101(a)(15)(U)(i), is his unsupported allegation of harassment which the local police chose not to investigate. If courts had any jurisdiction to review the denial of Perez's U visa, it is clear that under any standard of review the Secretary's denial would be affirmed.

**VI.**

Congress granted the USCIS absolute discretionary authority over U visa decisions. The Supreme Court prohibits us from reviewing decisions that Congress commits to agency discretion. The majority opinion breaches the separation of powers between our branches of government to arrogate the power unto itself to review the discretionary decisions of U visas. By misapplying the applicable statutes, by ignoring every other circuit that has decided this issue before us, and by violating the proper role of courts in our government, the majority opinion opens "Pandora's box" to courts reviewing the USCIS's decision of the approximately 250,000 U visa petitions currently pending before the USCIS seeking discretionary relief. This is not required by the applicable statutes and regulations, is unprecedented in our circuit, and contrary to the consistent position of our sister circuits. Because I would affirm the district court's dismissal for lack of subject matter jurisdiction, I dissent.